**In re NATIONAL TRADE CORPORA- TION, an Illinois corporation, Debtor.**

**Bankruptcy No. 79 B 8407.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 5, 1983.

See also 22 B.R. 877.

Richard E. Alexander, Mark J. Liss, Alexander & Zalewa, Ltd., Chicago, Ill., for Special Counsel.

James P. Chapman, Matthew J. Piers, James P. Chapman & Assoc., John Gubbins, Freeman, Atkins & Coleman, Chicago, Ill., for movants.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action comes to be heard on two motions to quash certain subpoenas, a motion for contempt or sanctions, and a motion for removal of the Special Counsel.

On December 11, 1978, Kmart Corporation (hereinafter referred to as Kmart) inadvertently sent a check for $2,000,000.00 to National Trade Corporation of Illinois (hereinafter referred to as NTC). Despite a demand for the return of this money on December 20, 1978, NTC did not return the money to Kmart. Accordingly, on January 11, 1979, Kmart filed suit in the United States District Court for the Northern District of Illinois seeking the return of this money with interest.

On September 1, 1979, NTC filed a voluntary petition under Chapter XI of the Bankruptcy Act. Leo H. Arnstein was appointed as Receiver of the debtor's estate. The bankruptcy court modified the automatic stay stemming from the bankruptcy petition on December 7, 1979, so that Kmart's action could proceed in the United States District Court. The district court granted summary judgment against NTC and on May 14, 1981, ordered that Kmart be paid $2,000,000.00 plus $574,734.34 in interest. On September 3, 1982, this court issued a memorandum opinion directing NTC to pay Kmart an additional $24,286.73 in interest on the district court's judgment.

Subsequently, Leo H. Arnstein was appointed as Trustee of the debtor's estate. On June 15, 1982, Richard E. Alexander (hereinafter referred to as Special Counsel) was appointed as Special Counsel to the Trustee "to investigate and pursue any and all causes of action the estate has against Dongkyu Hong," the former president of NTC.

On July 8, 1982, the Special Counsel served subpoenas returnable on July 20, 1982 on Mr. Arnold Kanter and Mr. Peter Flynn. On November 30, 1982, the Special Counsel also served a subpoena on Mr. Myron Cherry, through Mr. Cherry's counsel. Messrs. Cherry, Flynn and Kanter were attorneys in the law firm of Cherry, Flynn & Kanter, who represented NTC and Dongkyu Hong in the above-mentioned Kmart litigation. The subpoenas requested all documents relating to payments received from NTC and Dongkyu Hong, all documents tending to support certain allegations set forth in the counterclaims filed on behalf of NTC against Kmart, and all documents relating to any legal trust fund or other trust set up on behalf of or at the request of either NTC, Dongkyu Hong, or Mrs. Namjung Hong. Specifically, the Special Counsel was attempting to ascertain (1) whether $65,000.00 which was paid to Messrs. Cherry, Flynn and Kanter was for

services rendered to NTC, Dongkyu Hong individually, or both, (2) whether Messrs. Cherry, Flynn and Kanter rendered services which could reasonably be valued at $65,000.00, (3) whether there was any factual basis in support of the extensive counter-claims filed on behalf of NTC by Messrs. Cherry, Flynn and Kanter, and (4) whether Messrs. Cherry, Flynn and Kanter advised NTC or Dongkyu Hong not to return Kmart's $2,000,000.00 check, ultimately resulting in NTC's bankruptcy.

After this court granted an extension of time in which to respond to these subpoenas, Messrs. Flynn and Kanter moved to quash the subpoenas on the grounds that the information requested was (1) privileged attorney-client communications, (2) irrelevant to the bankruptcy proceeding, and (3) not reasonably calculated to lead to any admissible evidence. Moreover, Messrs. Flynn and Kanter argue that the subpoenas seek information relevant only to a dispute between Kmart and the law firm of Cherry, Flynn & Kanter.

On December 20, 1982, the Special Counsel filed a motion to impose sanctions or in the alternative, to hold in contempt Messrs. Cherry, Flynn and Kanter for failure to comply with this court's briefing schedule on the motions to quash. On January 23, 1982, Messrs. Cherry, Flynn and Kanter filed a joint motion to remove Mr. Richard E. Alexander as Special Counsel on the grounds that he has a conflict of interest concerning the litigation herein and has exhibited a personal animosity towards the subpoenaed parties.

As a result of this chain of events, the issues to be decided by this court are: (1) whether the Special Counsel is precluded from obtaining the subpoenaed information on the basis of the attorney-client privilege or relevancy, (2) whether sanctions or a citation of contempt should be imposed for failure to comply with the subpoenas and briefing schedule, and (3) whether the Special Counsel should be removed for a conflict of interest or inappropriate behavior.

■ In general, under Federal Rule of Civil Procedure 45(b), a court may quash a subpoena if it is unreasonable or oppressive. *See Premium Service Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975). Specifically, with regard to quashing the subpoenas on the basis of the attorney-client privilege, the power to assert or waive the privilege is possessed by the management of a corporation, not its individual officers. *See Citibank v. Andros,* 666 F.2d 1192, 1195 (8th Cir.1981). Since the Bankruptcy Act vests broad authority to manage the affairs of corporate debtor in its trustee, the corporation's attorney-client privilege passes with the property of the debtor's estate to the trustee. *Id.; In re O.P.M. Leasing Services, Inc.,* 13 B.R. 64, 67 (D.C.S. D.N.Y.1981). "Once the right is vested in the trustee, the exercise or waiver of the attorney-client privilege is a matter of his sole judgment and is not subject to veto by third parties who may have conveyed information to corporate counsel prior to the filing of the petition and may possibly be affected by the trustee's determination." *In re O.P.M. Leasing Services, Inc.,* 13 B.R. at 67. In the case at bar, on October 13, 1982, Leo H. Arnstein, Trustee, through his attorneys waived NTC's attorney-client privilege as to NTC's transactions with the law firm of Cherry, Flynn & Kanter. Consequently, this court holds that Messrs. Cherry, Flynn and Kanter cannot assert NTC's attorney-client privilege as a basis for quashing the subpoenas in question.

■ As to the relevancy of the information sought by the Special Counsel, "[t]he requirement of relevance is satisfied by showing a relationship between the documents to be produced and the purpose of the investigation." *In re Special November 1975 Grand Jury,* 433 F.Supp. 1094, 1097 (N.D.Ill.1977). Also, relevancy involves balancing the benefit of the information against the burden of production. *See Premium Services Corp. v. Sperry & Hutchinson Co.,* 511 F.2d at 229. In essence, Messrs. Cherry, Flynn and Kanter claim that there is no relationship between the information requested in the subpoenas and the investigation of Dongkyu Hong because the subpoenaed documents only concern a

potential dispute between Kmart and their law firm, not NTC and its former president, Dongkyu Hong.

This court recognizes that Dongkyu Hong has been particularly uncooperative in providing information throughout this proceeding. Currently, he is believed to be located in the State of Washington and either unable or unwilling to return to Illinois to submit to discovery. It is precisely this factual setting which requires the Special Counsel to ascertain as much information as possible concerning transactions involving Dongkyu Hong before the Special Counsel expends further funds to the estate to go to Washington to locate and depose Dongkyu Hong. Moreover, realizing the possible inconvenience and discomfort stemming from public disclosure of one's time sheets and billing statements, this court offered to make an in camera inspection of the subpoenaed documents in order to alleviate some of the potential burden to the law firm. This offer was rejected. Under these circumstances, this court finds that the information requested in the subpoenas is related to the prosecution of claims against Dongkyu Hong and claims on behalf of this estate. In addition, this court finds the need for this information outweighs the burden to Messrs. Cherry, Flynn and Kanter. Consequently, both motions to quash are denied, and Messrs. Cherry, Flynn and Kanter are directed to produce the documents requested in the subpoenas.

 The second issue is whether sanctions or a citation of contempt should be issued against Messrs. Cherry, Flynn and Kanter. The Bankruptcy Court's ability to punish by contempt stems from Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a) (1979) and Section 2(a)(15) of the prior Bankruptcy Act. *See In Re Mullen,* 14 B.R. 39, 40 (S.D.Ohio 1981). Generally, the power of contempt is reserved for parties before the court "... whose actions show a clearly contumacious frame of mind." *In re Hurricane Elkhorn Coal Corp. II,* 19 B.R. 609, 621 (Bkrtcy.W.D.Ky.1982). *See also In re Porter,* 25 B.R. 425, 428 (Bkrtcy.D.Vt.1982). While Messrs. Cherry,

Flynn and Kanter have not promptly complied with this court's briefing schedule, all memoranda required by this court have been submitted. Moreover, the motions to quash filed on behalf of Messrs. Flynn and Kanter have been made in good faith. Therefore, this court holds that the behavior of the parties in question does not warrant the imposition of sanctions or a citation of contempt.

 The final issue is whether Richard E. Alexander should be removed as Special Counsel to the Trustee. Generally, a trial court is given broad discretion to determine whether disqualification of an attorney is warranted in a particular case. *See Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706, 710 (7th Cir.1976). The well settled rule in this circuit is that "where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially related'". *Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 223 (7th Cir.1978). In the case at bar, the parties who are adverse to the Special Counsel (i.e., Messrs. Cherry, Flynn and Kanter and Dongkyu Hong) were not former clients of the Special Counsel.

Moreover, the instant case is strikingly similar to *In re Fondiller,* 15 B.R. 890 (Bkrtcy. 9th Cir.1981). In *Fondiller,* a law firm was employed as special counsel to the trustee to investigate possible fraudulent conveyances by the debtor. This firm also represented certain creditors of the debtor. The court in *Fondiller* held that the firm was not disqualified from acting as special counsel under Section 327(c) of the Bankruptcy Code, 11 U.S.C. § 327(c) (1979), because a special counsel serves only in a limited capacity which does not trigger application of Section 327(c) and because the interest of the firm as special counsel was identical to the interest of the estate. *Fondiller,* 15 B.R. at 892. Accordingly, following the rationale of *Fondiller,* this court finds that the interest of Richard E. Alexander as Special Counsel to the Trustee is identical, rather than adverse, to the interest of the estate.

This court also notes that Richard E. Alexander did not actively seek to be appointed as Special Counsel to the Trustee and was considered for appointment due to the petition of the Trustee. At the hearing on that petition, no one objected to the appointment of Mr. Alexander. Notwithstanding the lack of objection, Mr. Alexander raised the issue of a possible conflict of interest, and this court determined at that time that no appearance of impropriety existed. While the Special Counsel has been vigorous and aggressive in attempting to obtain certain documents and has even attempted to establish a similarity between the conduct of Messrs. Cherry, Flynn and Kanter in this case and their purported improper conduct in other cases, this court finds no evidence to establish that the Special Counsel's requests for documents were motivated by a personal vendetta against Messrs. Cherry, Flynn and Kanter. Consequently, this court holds that the motion to remove Richard E. Alexander as Special Counsel to the Trustee is denied.

The Special Counsel is to prepare a draft order in accordance with this opinion within five (5) days.