In re H & S TRANSPORTATION COMPANY, INC., Debtor.

Bankruptcy No. 381–02803.

United States Bankruptcy Court, M.D. Tennessee.

Feb. 8, 1985.

C. Bennett Harrison, Nashville, Tenn., Trustee.

Caldwell Hancock, Nashville, Tenn., Member of applicant law firm.

Paul Jennings, Nashville, Tenn., for applicant.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a fee application submitted by Waddey & Newport (hereinafter referred to as "applicant"), attorney for Irwin A. Deutscher, the former H & S trustee, seeking attorney's fees in the amount of $88,479.25 and expenses in the amount of $1,744.44. C. Bennett Harrison, the successor H & S trustee (hereinafter referred to as "successor trustee"), has objected to the fee application asserting that the applicant represented clients with conflicting interests. The successor trustee has also argued that, if the court grants the applicant's fee request, payment should be delayed to ensure the existence of sufficient assets to pay the estate's Chapter 7 administrative expenses. Upon consideration of the evidence presented, briefs of the parties, statement of counsel and the entire record, this court concludes that the applicant's fee request should be GRANTED, but the full award shall not be paid at this time.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The applicant represented the same trustee, Irwin A. Deutscher, in four related bankruptcy estates: Inland Transportation Company ("Inland"); River Line, Inc.; H & S Transportation Company ("H & S"); and River Merchandising, Inc. These Chapter 11 estates have entered into Middle District bankruptcy lore as the "barge" cases.

Each of the bankrupt companies provided different services necessary to the operation of a river transportation business on the inland waterway system of the United States. Inland owned and chartered towboats which were used to transport barges. The barges were supplied by River Line. H & S, although an owner of two towboats and three oil barges, primarily provided personnel to operate the towboats. River Merchandising traded in freight contracts of bulk grain commodities.

These corporations were controlled by J.W. Armstrong, Jr., William H. Barton, Jr. and J.C. Campbell. Mr. Armstrong was an equity shareholder in each of the corporations. He was the president and sole shareholder of Inland; he and Mr. Campbell each owned 50% of the stock of River Line and River Merchandising; and, he owned, equally with Mr. Barton, the stock of the parent corporation of H & S, a wholly-owned subsidiary. Due to the related nature of these businesses and Mr. Armstrong's involvement in them, a number of business practices developed which intertwined all four corporate entities. The most notable of these practices were the cash management system known as the J.W.A. master account and intercompany dealings which created intercompany claims.

During the hearing on this application, Caldwell Hancock, a member of the applicant law firm, described the cash management system. Approximately 20 companies in which Mr. Armstrong had varying interests pooled their funds in one bank account. The account was then used to supply cash-poor companies with short term loans. As a result of this system, a number of complex financial transactions occurred among the companies which participated in the cash management system. In addition to this incestuous cash management system, a number of prepetition intercompany claims arose among the four debtor estates, including a $1.6 million claim of H & S against Inland for providing crews, fuel and repair services.

The successor trustee has argued that the applicant improperly represented Mr. Deutscher in his capacity as trustee of the four barge cases. He points to the existence of the cash management system and the $1.6 million intercompany claim between H & S and Inland as examples of conflicts inherent in the representation of all four estates. This was manifested by the applicant filing a proof of claim on behalf of H & S against the proceeds from the sale of one of Inland's towboats, the M/V CLYDE DUNLAP, and filing an objection to that claim on behalf of Inland. Finally, the successor trustee has argued that the applicant failed to disclose these conflicts to the court and, therefore, must be denied compensation.

The applicant countered that it represented the trustee in all four estates in a limited capacity. The applicant presented the testimony of Mr. Hancock, the partner primarily responsible for the H & S case, as well as numerous exhibits, including the orders appointing the applicant as attorney for Mr. Deutscher in these four estates, as well as this court's memorandum and judgment ordering joint administration of the estates.

Mr. Hancock testified that the firm agreed to represent the trustee in the barge cases only to the extent that the interests of each estate were parallel. The firm refused to represent Mr. Deutscher in any manner in which an actual or potential conflict of interest arose. Mr. Hancock testified that this arrangement was consistent with the manner in which the trustee chose to handle the four estates. Mr. Deutscher was concerned with finding and

liquidating the tangible assets of each estate as well as recovering preferential transfers as quickly as possible. Once he had consolidated the assets of each estate, he could then determine whether assets were available to pay intercompany claims and could deal with those claims in the most cost-efficient manner.

Mr. Deutscher was able to administer these estates in the above-described manner for two reasons. First, he had obtained an injunction restraining any company involved in the cash management system from withdrawing funds from the J.W.A. master account unless it had the approval of the bankruptcy court. This injunction allowed Mr. Deutscher to protect whatever interest the four estates had in the capital management system until a later time when the system could be unraveled. Second, due to the joint administration of the four estates, he could coordinate their progress and avoid dealing with conflicting claims between the estates until it was determined whether pursuing such matters would be beneficial. Indeed, this court's order allowing joint administration pointed to the confusion among the assets and liabilities of the estates and appointed "... an independent trustee to unravel the financial status of these debtor corporations and to determine whether or not a successful reorganization of these debtor corporations is feasible." *In re H & S Transportation Company, Inc.,* Case No. 381–02803, *slip op.* at 8 (Bankr.M.D.Tenn. April 23, 1982).

The Bankruptcy Code in 11 U.S.C. § 327(a) (West 1979) allows the trustee to employ attorneys "... that do not hold or represent an interest adverse to the estate, and that are disinterested persons...." Although the requirements of holding no adverse interest and of being a disinterested person oftentimes overlap, each definition can be traced to a specific source. The requirement that an attorney hold no interest adverse to the estate can be traced to the seminal Supreme Court case of *Woods v. City National Bank & Trust Company,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941). In *Woods,* the court concluded that an attorney representing a creditors' committee and the trustee in the same estate "... was serving more than one master or was subject to conflicting interests ..." and, consequently, denied compensation. *Woods,* 312 U.S. at 268, 61 S.Ct. at 497, 85 L.Ed. at 825. The requirement of disinterestedness is adapted from § 158 of Chapter X of the Bankruptcy Act of 1898 and is now in 11 U.S.C. § 101(13) (West 1979).[1] The Code defines a disinterested person as including creditors, equity security holders, insiders, the debtor's investment bankers, and persons with an interest "... materially adverse to the interest of the estate or of any class of creditors or equity security holders...."[2]

To determine when an attorney representing a trustee in a reorganization proceeding involving related estates has abrogated these standards, the courts have focused on three areas of inquiry. First,

---

1. A review of § 158 of Chapter X of the Bankruptcy Act of 1898, 11 U.S.C. § 558 (West 1970) reveals that, although § 11 U.S.C. § 101(13) (West 1979) expands and modifies the definition of a "disinterested person" in some respects, the definition remains essentially the same. *See Hassett v. McColley (In re O.P.M. Leasing Services, Inc.),* 16 B.R. 932, 939 (Bankr.S.D.N.Y.1982).

2. The successor trustee, as well as a number of courts, has turned to the disciplinary rules under Canon 5 of the Code of Professional Responsibility as an aid in identifying when an attorney is representing adverse interests. Disciplinary Rule 5–105 of the Code of Professional Responsibility provides in relevant part:
    "(A) A lawyer shall decline proferred employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of a proferred employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

    •    •    •    •    •

    (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

they have examined the relationships between the estates and determined whether the interests of the estates were parallel or conflicting. Second, they have analyzed the representation of the attorney and determined whether the attorney represented parallel or conflicting interests. Finally, the courts have considered the efficiency of employing one counsel and the practicalities of administering several related estates. A review of several cases dealing with an attorney's representation of jointly-administered estates illustrates this three-pronged analysis.

In the case of *In re Iorizzo*, 35 B.R. 465 (Bankr.E.D.N.Y.1983), a creditor asked the court to reconsider its order allowing the appointment of one law firm to represent the trustee administering five corporate estates and one individual estate. In these proceedings, the trustee was concerned with finding the assets concealed by the individual debtor using his five corporations. The law firm was hired to represent the parallel interests of the six estates in investigating and uncovering assets. All inter-estate litigation was stayed until joint efforts among the estates were no longer necessary. Aware of the relationship among the estates and the representation undertaken by the law firm, the court found that the law firm did not represent conflicting interests and that its parallel representation of the six estates was necessary for efficient administration.

The court in the case of *Hassett v. McColley (In re O.P.M. Leasing Services, Inc.)*, 16 B.R. 932 (Bankr.S.D.N.Y.1982) dealt with an attempt to remove a trustee as well as his counsel from representing both a parent corporation and its subsidiary. The court, after reviewing numerous Act cases,[3] found that the parent and the subsidiary had a unity of interest and a singleness of purpose in the pending proceedings, that the trustee's counsel was representing the unified interests of both, and that any assertion that counsel labored under a conflict of interest was "metaphysical". Based on these findings, the court concluded that the trustee's counsel should not be removed and that efficient administration supported the appointment of one trustee and counsel in these proceedings. One should note that the *Hassett* court relied upon a previous finding that the trustee did not represent conflicting interests and then used that determination to support its holding that the trustee's counsel did not represent conflicting interests.[4]

Finally, the court in the case of *Fondiller v. Robertson*, 15 B.R. 890 (Bankr. 9th Cir.1981) focused on the propriety of a law firm representing a trustee in a limited capacity to avoid conflicts of interest. *See also In re National Trade Corporation*, 28 B.R. 872 (Bankr.N.D.Ill.1983). In the *Fondiller* case, the court held that the trustee's employment of a special counsel was proper since the special counsel's representation was limited to the recovery of concealed assets and the investigation of fraudulent conveyances which did not involve any of the estate's creditors represented by his law firm. Although this case does not address the same type of conflicts found in the previous two cases, it does recognize that a law firm may limit its representation so as to avoid conflicts of interest.

---

**3.** The *Hassett* case recognizes a number of Act cases which held that an individual could act as a reorganization trustee in both a parent corporation and its wholly-owned subsidiary. Among these cases, the *Hassett* court notes the concern of the Second Circuit in the case of *In re National Public Service Corp.*, 68 F.2d 859 (2nd Cir. 1934) of not saddling several related estates with the expense of separate trustees and trustees' attorneys based on merely the existence of intercompany claims.

**4.** In defining the disinterested requirement under 11 U.S.C. § 327 (West 1979), Collier recognizes that "... [t]he Code requires the same degree of disinterestedness on the part of an attorney or other professional person employed by the trustee that is required of the trustee in a reorganization case." 2 COLLIER ON BANKRUPTCY § 327.03, at 327–12 (15 ed. 1984). Thus, Collier supports the *Hassett* court's use of previous findings that the trustee represented parallel interests in determining whether or not the trustee's counsel represented conflicting interests.

In this case, the court must determine whether the applicant was disinterested and whether it held any interest adverse to the H & S estate. This requires examining the relationships among the four estates in which the applicant was employed, analyzing whether the applicant represented conflicting or parallel interests, and, if the applicant represented parallel interests, considering whether the trustee could more efficiently administer the estates by hiring one law firm.

The four "barge" cases were interrelated in numerous ways. They relied on each other to operate their river transportation businesses; each was at least partly controlled by Mr. Armstrong; each participated in the cash management system; and each held a number of intercompany claims. Due to this close relationship, the court, on the request of two creditors, found that the financial affairs of the corporations were in total disarray, producing considerable confusion over which corporation held which assets and which liabilities. *In re H & S Transportation Company,* Case No. 381–02803, *slip op.* 7–8 (April 23, 1982). Based on this finding, the court held that it was in the best interest of all parties to order joint administration of these estates.

Irwin A. Deutscher was appointed trustee in the H & S case on October 16, 1981. Subsequently, on October 20, 1981, this court appointed the applicant as the trustee's attorney in that case *nunc pro tunc* to October 16, 1981. On April 23, 1982, the court ordered joint administration of all of the barge cases except River Management, Inc. and appointed Irwin Deutscher, the H & S trustee, as trustee for these jointly-administered estates. On May 27, 1982 and June 4, 1982, the court approved the applicant's appointment as attorney for the trustee in the estates of Inland, River Line, Inc. and River Merchandising, Inc. *nunc pro tunc* to April 23, 1982. The three orders approving the appointment of the applicant in River Line, River Merchandising and Inland were identical and recognized that the applicant had been appointed in a companion case.

At the hearing, the applicant presented evidence that it had entered into an agreement with the trustee to represent him only where the interests of the four estates were parallel. Such an agreement corresponded with this court's order allowing the trustee to administer the estates and with the manner in which the trustee proceeded with said joint administration. This court holds that, with one exception, the applicant represented interests parallel with those of the H & S estate and thus, by representing the trustee in a limited capacity, avoided any conflict of interest.

The applicant did, however, represent conflicting interests at the end of its representation when it filed a claim on behalf of H & S against the proceeds from the sale of the M/V CLYDE DUNLAP and filed an objection to that claim on behalf of Inland. The applicant then assisted the trustee in presenting this conflict to the court so that the court could modify the joint-administration order and ensure the continued efficient administration of the estates. The applicant has quite appropriately requested no compensation for these services and the court finds that the applicant's action concerning the M/V CLYDE DUNLAP claim was not sufficient to deny compensation.

The court, in its April 23, 1982, memorandum allowed the joint administration of these four estates in order to promote efficiency and reduce costs. A single trustee was appointed and the court held that the mere existence of an interrelationship between the agent's estate and the other three estates do not create a conflict of interest disqualifying this trustee. *Supra* at 132. The applicant represented this trustee in each of the four estates he jointly administered. This court has found that the applicant represented interests parallel to that of the H & S estate. Just as the appointment of a single trustee in these four estates was beneficial and efficient, the appointment of a single law firm to represent the trustee was also beneficial and efficient. Accordingly, the court holds

that the applicant complied with the requirements of 11 U.S.C. § 327 (West 1979).

█ Since the applicant did not represent conflicting interests, it is entitled to reasonable compensation. In this circuit, the court must determine reasonable compensation based on the criteria enunciated in the familiar case of *Cle-Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863 (6th Cir. 1974). The court has reviewed the applicant's fee application in light of the *Cle-Ware* standards and is convinced that the work performed was necessary and that the compensation requested is reasonable. At trial, the parties stipulated that the fee application was, due to clerical errors, overstated by $1,851.25. The court also finds that due to clerical errors the application should be reduced by 2.25 hours for an additional reduction in fees of $168.75. Accordingly, the court holds that the applicant is entitled to fees in the amount of $86,459.25 and expenses in the amount of $1,744.44.

The final issue this court must address is whether it should delay payment of the applicant's fees due to the present status of the estate. The parties stipulated that the estate presently has $170,000 available for distribution and that the accrued unpaid administrative expenses are approximately $50,000 to $75,000. The trustee informed the court that 12 adversary proceedings are currently pending and, if he is fully successful in these actions, he could recover an additional $300,000 for the estate. The trustee argues that, if the court were to allow payment of the applicant's entire fee at this time, it would substantially reduce the estate and jeopardize its liquidation.

█ A number of courts have found it appropriate to reduce interim fee awards to allow for contingencies in the future administration of the estate. *See In re General Coffee Corp.*, 39 B.R. 7 (Bankr.S.D.Fla. 1984); *In re Coconut Bayshore, Inc.*, 33 B.R. 194 (Bankr.S.D.Fla.1983). In determining whether to delay payment of part of a fee request, courts have examined each situation and considered the available assets and likely contingencies. The court has considered the present condition of the estate, the accrued administrative expenses, the possible recoveries foreseen by the trustee and the possible future liquidation expenses in determining the amount to award the applicant at this time. Under the facts of this case, it is appropriate to delay payment of 25% of the applicant's fee award. Accordingly, the court hereby ORDERS, ADJUDGES and DECREES that the applicant is presently entitled to $64,-844.44, which represents 75% of its fee award, and expenses in the amount of $1,744.44.

IT IS, THEREFORE, SO ORDERED.