## In re GRAND JURY SUBPOENA TO ATTORNEY (UNDER SEAL).

### Misc. No. 85–311–W.

United States District Court,
N.D. West Virginia,
Wheeling Division.

Feb. 29, 1988.

William D. Wilmoth, Patrick Casey, Wheeling, W.Va., for petitioner.

Marty Sheehan, Asst. U.S. Atty., Wheeling, W.Va., for U.S.

Paul T. Camilletti, Wheeling, W.Va., for attorney (Under Seal).

### MEMORANDUM OPINION

MAXWELL, Chief Judge.

This matter is before the Court on this second occasion upon the Government's NOTICE OF ISSUANCE OF GRAND JURY SUBPOENA, REQUEST FOR A HEARING AND MOTION FOR EXPEDITED RULING, filed on January 8, 1988, and a SUBPOENA TO TESTIFY BEFORE GRAND JURY, issued at the insistence of the United States Attorney, on January 8, 1988, to an attorney admitted to practice before the bar of the court, commanding his appearance on January 19, 1988, at 9:00

A.M. to testify before the Grand Jury, and also commanding that he bring with him

> [a]ll documents pertaining to the representation of [the Intervenor herein] in ... in the United States Bankruptcy Court for the Northern District of West Virginia and any file maintained by [the attorney] with respect to that matter.

The immediate focus of this renewed controversy is whether an individual, apparently the target of an ongoing grand jury investigation, may successfully intervene to prevent (1) his attorney from testifying before the grand jury with respect to aspects of a substantive attorney-client relationship and (2) from producing documents from the attorney's files relative to that relationship.

The broader questions, as presented here, raise substantial concerns regarding the government's apparently increasing practice [1] of causing grand jury subpoenas to be served upon private attorneys compelling the revelation of information and/or the production of documents relating to their present or former clients. The implications of this disturbing practice are great, to the point of threatening the keystone of the attorney-client relationship, most notably the trust placed by clients in their attorneys.

While the Court is mindful of the public's interest in the proper and effective functioning of the grand jury, the Court is also cognizant of the public's interest in the protection of the attorney-client relationship in the face of the threat posed by the unsupervised, government initiated issuance of grand jury subpoenas directed to private attorneys.

The Court believes that the record of this matter compels the preservation of the confidences held by the attorney within this attorney-client relationship. Accordingly, upon the rationale enunciated below, an order will be entered quashing the Grand Jury Subpoena issued January 8, 1988 to Attorney (Under Seal).

## I.

This matter first came on for hearing before this Court over two years ago on December 11, 1985 upon MOTION TO INTERVENE AND TO QUASH SUBPOENAS AD TESTIFICANDUM filed by the Intervenor, apparently a target of an ongoing grand jury investigation. The Intervenor sought to intervene and have quashed a proposed subpoena ad testificandum, which he anticipated would be served on behalf of the United States upon his attorney. In support of his motion, the Intervenor filed his affidavit alleging that he had obtained the legal services of Attorney (Under Seal) in connection with the filing of a voluntary bankruptcy petition in the early summer of 1983. The motion of the Intervenor urged that the testimony of his attorney or the production of any of the subpoenaed documents would invade the rights of the Intervenor under the attorney-client privilege and the work-product doctrine.

The earlier Grand Jury, where the issues presently under consideration first surfaced, was convened on November 18, 1985, pursuant to Orders of this Court entered October 28, 1985, and November 7, 1985. By virtue of the Amended Plan for Random Section of Grand and Petit Jurors in the Northern District of West Virginia (April 29, 1983), insofar as it involves length of service of grand juries in the district, the empanelling order provided:

> It is further ORDERED that 23 persons constitute the Grand Jury, and, when empanelled, they shall continue in service pursuant to applicable law for a period of six months or until earlier discharged by the Court.

In accordance with the Court's Order, and there having been neither formal motion nor informal request for extension of the

---

**1.** *See* Genego, *Risky Business: The Hazards of Being a Criminal Defense Lawyer,* 1 Crim.Just. 1 (1986); Peirce and Colamarino, *Defense Counsel as a Witness for the Prosecution: Curbing the Practice of Issuing Grand Jury Subpoenas to Counsel for Targets of Investigations,* 36 Has-tings L.J. 821 (1985); Zwerling, *Federal Grand Juries v. Attorney Independence and the Attorney–Client Privilege,* 27 Hastings L.J. 1263 (1976); Note, *Grand Jury Subpoenas of a Target's Attorney: The Need for a Preliminary Showing,* 20 Ga.L.Rev. 747 (1986).

same, the said Grand Jury was discharged from service on May 8, 1986.

Although the anticipated subpoena was never served upon Attorney (Under Seal), the government filed its Brief in Opposition to the Motion and a hearing was held in this matter on December 11 and 12, 1985 to address the merits of the Intervenor's motion. Generally, the government argued that although the proposed grand jury inquiry of Attorney (Under Seal) would relate in some respects to the legal service rendered by him to the Intervenor, there existed no privilege which would protect this attorney-client communication. In support of this position the government principally asserted the crime fraud exception to the attorney-client privilege. In the alternative the government argued that any attorney-client privilege which may have existed was waived by the filing of the bankruptcy petition and papers attendant thereto, all of which had become public documents, available and presumably presented by the United States Attorney to the Grand Jury.

Upon further inquiry of the nature of the disclosure sought by the government, Martin P. Sheehan, Assistant United States Attorney for the Northern District of West Virginia, indicated that it would be

> important to know what kind of advice that [Attorney (Under Seal)] would have given and what explanations [Attorney (Under Seal)] would have made as to the various components of the bankruptcy schedules and so forth. That is important from the aspect of what [the Intervenor] understood that he had to put on these schedules and how he had to answer questions and when he was required to make public disclosure of that.[2]

Following argument on these matters in open court, the Court conducted an *in camera* examination of Attorney (Under Seal), on December 12, 1985, propounding to him some thirty questions which had been prepared by the government and submitted to the Court in an effort to more precisely define the nature and scope of the government's inquiry. Those questions, along with the Court Reporter's notes of the *in camera* proceeding, together with records and documents tendered to the Court by Attorney (Under Seal), were sealed by the Court following the *in camera* hearing. The Court then took the matter under advisement, pending a review of the underlying, ongoing bankruptcy appeal, which was at that time and presently remains on appeal to this Court.

On May 7, 1986, the Court, noting that questions regarding the parameters of the attorney-client relationship must be examined carefully in order to ensure that the relationship retains the protection it deserves, concluded that pursuing the matter as proposed would amount to an unwarranted intrusion into the confidentiality of the attorney-client relationship and granted the Intervenor's motion.

On June 5, 1986, the government filed its Notice of Appeal and the matter was argued before the United States Court of Appeals for the Fourth Circuit on December 11, 1986. On October 1, 1987, the Court of Appeals remanded the matter to this Court with instructions to dismiss the same as moot,[3] the Grand Jury in question having been discharged from service on May 8, 1986. The Court of Appeals further suggested

> that the United States make its application on the first day the next grand jury is convened, or cause subpoenas to be issued with return on that day, and that

---

**2.** December 11, 1985 Hearing Transcript at pp. 8–9.

**3.** The Court of Appeals, noting the frequent availability of grand juries in this district, indicated that it was disposed to follow

> the unanimous decision in reported cases from the circuits that the discharge of an investigating grand jury ends its authority and thus renders moot an appeal arising out of

that grand jury's actions. See *In Re Grand Jury of August, 1965,* 360 F.2d 917 (7th Cir. 1966); *Graziadei v. United States,* 319 F.2d 913 (7th Cir.1963); *Loubriel v. United States,* 9 F.2d 807 (2d Cir.1926).

*United States v. (UNDER SEAL),* No. 86–5092 (4th Cir. October 1, 1987) (UP), 8–9 [831 F.2d 292 (table) ].

it request prompt action by the district court with respect to the same.[4]

In keeping with the suggestion of the Court of Appeals, the government caused the above-referenced Grand Jury Subpoena to be issued on January 8, 1988, and provided notice of the same to the subpoenaed witness and also to William D. Wilmoth, counsel for the Intervenor, in order to revive the original Miscellaneous Action and to pursue the same within the time frame of the Grand Jury empanelled January 19, 1988. This Grand Jury served during the week of January 19 and will return for service the week of February 29, the week of April 11, the week of May 16, and the week of July 11.[5]

At the request of the parties, a hearing was scheduled in the matter on January 19, 1988, the date on which Attorney (Under Seal) was to appear in response to the subpoena. On that date, Martin P. Sheehan and William D. Wilmoth filed a Stipulation setting forth the history of this matter and appended thereto twenty exhibits which they indicate "constitute materials relevant to the Court's decision" in this matter.[6] In addition to these exhibits, Messrs. Sheehan and Wilmoth stipulate that "the Court should consider the *ex*

*parte* affidavit of Special Agent Burgoyne, which is sealed from the Intervenor, and the transcript of the Court's interview of [Attorney (Under Seal)] on December 11, 1985, which is sealed from the government." [7]

In order to avoid any question of mootness [8] of the issues now before this Court, we proceed with dispatch in order that either of the parties may seek appellate review prior to the scheduled termination of the current Grand Jury, which is now scheduled for the last working day of the week of July 11, 1988, being July 15, 1988.

## II.

The serious question presented here justifies the considerable concern it has raised as it challenges the effective functioning of traditional attorney-client relationships in our American system of justice. Indeed, the American Bar Association House of Delegates in February, 1986, approved a resolution urging the requirement of a non-adversarial judicial approval prior to the issuance of subpoenas directed to attorneys and seeking information regarding their clients.[9]

---

4. *United States v. (UNDER SEAL), supra,* at 8.

5. The Court's Order empanelling the current Grand Jury provides that the Grand Jury shall meet for one week sessions scheduled at six week intervals, during its six month term of service. The United States Attorney's motion requesting the empanelling of this current regular Grand Jury suggested that this schedule is the "optimal time for effective functioning of the grand jury, the United States Attorney's office and law enforcement personnel."

6. Although it does not appear that a motion to quash the subpoena issued January 8, 1988, has been filed, the stipulation filed herein and the representations made by Messrs. Sheehan and Wilmoth clearly indicate that the matter is nevertheless ripe for disposition.

7. The Court would note that the record of this matter indicates that the interview in question was held on December 12, 1985. The record of this matter also indicates that the transcript of the Court's *in camera* interview of Attorney (Under Seal) has been sealed from all parties herein.

8. Apparently, the government had argued on appeal that this Court had discharged the Grand

Jury on May 8, 1986, in order to moot the issues raised and suggested by this and other grand jury matters.

9. The text of the resolution is as follows:

BE IT RESOLVED, That a prosecuting attorney shall not subpoena nor cause a subpoena to be issued to an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel and the attorney/witness *to provide evidence concerning a* person who is represented by the attorney/witness; and

BE IT FURTHER RESOLVED, That prior judicial approval shall be withheld unless the court, in an *ex parte* hearing, finds:

1. the information sought is not protected from disclosure by the attorney-client privilege or the work product doctrine;

2. the evidence sought is relevant to an investigation within the jurisdiction of the grand jury;

3. the purpose of the subpoena is not primarily *to harass the attorney/witness* or his or her client; and

4. there is no other feasible alternative to obtain the information sought.

BE IT FURTHER RESOLVED, That the *ex parte* hearing seeking judicial approval shall be

According to United States Department of Justice statistics, subpoenas to compel attorney testimony before both grand and petit juries were utilized with increasing frequency during the thirteen months immediately following the 1986 ABA resolution.[10] This increase, "coupled with the sense that subpoenas to attorneys were becoming an increasingly attractive investigative method,"[11] led the ABA House of Delegates to adopt an expanded policy in February, 1988, which addresses perceived inadequacies in the 1986 resolution,[12] and urges *prior adversarial* judicial proceedings. In addition, certain jurisdictions have adopted local rules which govern the issuance of subpoenas directed to attorneys seeking to compel evidence which the attor-

ney may possess as a result of an attorney-client relationship.[13]

Ethical considerations also dictate that the proper functioning of the legal system requires a lawyer to zealously preserve inviolate the trust of his client. In this regard the West Virginia Code of Professional Responsibility, as amended, requires a lawyer to protect the confidences and secrets of his client. This ethical obligation is broader than and also encompasses the time-honored common law attorney-client privilege. In addition to other exceptions not particularly pertinent here, Canon 4 of the West Virginia Code of Professional Responsibility provides that "a lawyer shall not knowingly ... [r]eveal a confidence or secret of his client" or "[u]se a confidence or secret of his client to the disadvantage

conducted with consideration for the need for the secrecy of grand jury proceedings. The hearing shall be conducted by a judge of a court of general criminal jurisdiction, and, wherever feasible, by the judge supervising the grand jury in question; and

BE IT FURTHER RESOLVED, That no affirmative finding in the *ex parte* proceeding shall have any evidentiary value in any subsequent adversary proceeding to determine the validity or enforcement of the subpoena; and

BE IT FURTHER RESOLVED, That the American Bar Association urges that these principles be implemented by state and federal authorities through appropriate means such as rules of court, statutes, and case law.

**10.** American Bar Association Criminal Justice Section Report to the House of Delegates at the Midyear Meeting of the American Bar Association [hereinafter cited as Criminal Justice Section Report], notes 1 & 2 and accompanying text.

**11.** Criminal Justice Section Report, p. 3.

**12.** The text of the 1988 resolution is as follows:

BE IT RESOLVED, That where a prosecutor seeks to compel an attorney to provide evidence obtained as a result of the attorney-client relationship concerning a person who is or was represented by the attorney, the prosecutor shall not subpoena nor cause a subpoena to be issued to the attorney without prior judicial approval after an opportunity for an adversarial proceeding; and

BE IT FURTHER RESOLVED, That prior judicial approval shall be withheld unless the court finds, on reasonable notice to the attorney and the client:

1. the information sought is not protected from disclosure by any applicable privilege;

2. the evidence sought is essential to the successful completing of an ongoing investigation or prosecution and is not merely peripheral, cumulative or speculative;

3. the subpoena lists the information sought with particularity, is directed at information regarding a limited subject matter and a reasonably limited period of time and gives reasonable and timely notice;

4. the purpose of the subpoena is not to harass the attorney or his or her client; and

5. the prosecutor has unsuccessfully made all reasonable attempts to obtain the information sought from non-attorney sources and there is no other feasible alternative to obtain the information.

BE IT FURTHER RESOLVED, That at the hearing, the prosecutor seeking to subpoena information as defined above, must submit to the appropriate court an affidavit making a particularized showing of the facts establishing all of the requirements specified above. The affidavit shall be disclosed to the attorney and the client. However, upon a special showing of compelling need, the affidavit may be maintained as an *ex parte* affidavit until such time as the need for secrecy is no longer compelling; and

BE IT FURTHER RESOLVED, That any hearing seeking judicial approval for a grand jury subpoena shall be conducted with consideration for the need for secrecy; and

BE IT FURTHER RESOLVED, That the American Bar Association urges that these principles be implemented by state and federal authorities through appropriate means such as rules of court, statutes, and case law.

**13.** *See, e.g., United States v. Klubock,* 639 F.Supp. 117 (D.Mass.1986), *aff'd,* 832 F.2d 649 (1st Cir.) *aff'd by an equally divided Court,* 832 F.2d 664 (1st Cir.1987) (en banc). *See also* Criminal Justice Section Report, note 3 and accompanying text.

of his client" unless "required by law or court order" to do so.[14]

In July of 1985 the Department of Justice issued a new section of the United States Attorney's Manual entitled "Policy With Regard to the Issuance of Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of Clients," an internal effort to exercise close control over the issuance of such subpoenas, directing, *inter alia*, that such subpoenas not be issued "without the express authorization of The Assistant Attorney General of the Criminal Division."[15] In the matter herein presented the Court is not advised whether the requisite authorization for issuance of the subpoena[16] was requested or obtained. Moreover, a review of the government's brief and oral argument does not reflect that the government asserts that the criteria established by the Department of Justice guideline has been fully considered.[17]

**14.** West Virginia Code of Professional Responsibility, Disciplinary Rule 4–101(B) and (C).

**15.** The full text of the Department of Justice guidelines is as follows:

Because of the potential effects upon an attorney-client relationship that may result from the issuance of a subpoena to an attorney for information relating to the representation of a client, it is important that the Department exercise close control over the issuance of such subpoenas. Therefore, the following guidelines shall be adhered to by all members of the Department in any matter involving a grand jury or trial subpoena:

A. In determining whether to issue a subpoena in any matter to an attorney for information relating to the representation of a client, the approach must be to strike the proper balance between the public's interest in the fair administration of justice and effective law enforcement and individual's right to the effective assistance of counsel.

B. All reasonable attempts shall be made to obtain information from alternative sources before issuing a subpoena to an attorney for information relating to the representation of a client, unless such efforts would compromise a criminal investigation or prosecution or would impair the ability to obtain such information from an attorney if such attempts prove unsuccessful.

C. All reasonable attempts shall be made to voluntarily obtain information from an attorney before issuing a subpoena to an attorney for information relating to the representation of a client, unless such efforts would compromise a criminal investigation or prosecution or would impair the ability to subpoena such information from the attorney if such attempts prove unsuccessful.

D. No subpoena may be issued in any matter to an attorney for information relating to the representation of a client without the express authorization of the Assistant Attorney General of the Criminal Division.

E. In approving the issuance of a subpoena in any matter to an attorney for information relating to the representation of a client, the Assistant Attorney General of the Criminal Division shall apply the following principles:

(1) In a criminal investigation or prosecution, there must be reasonable grounds to believe that a crime has been or is being committed and that the information sought is reasonably needed for the successful completion of the investigation or prosecution. The subpoena must not be used to obtain peripheral or speculative information;

(2) In a civil case, there must be reasonable grounds to believe that the information sought is reasonably necessary to the successful completion of the litigation;

(3) All reasonable attempts to obtain the information from alternative sources shall have proved to be unsuccessful;

(4) The reasonable need for the information must outweigh the potential adverse effects upon the attorney-client relationship. In particular, the need for the information must outweigh the risk that the attorney will be disqualified from the representation of the client as a result of having to testify against the client;

(5) Subpoenas shall be narrowly drawn and directed at material information regarding a limited subject matter and shall cover a reasonably limited period of time; and

(6) The information sought shall not be protected by a valid claim of privilege.

These guidelines on the issuance of grand jury or trial subpoenas to attorneys for information relating to the representation of clients are set forth solely for the purpose of internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice.

**16.** The subpoena in question was issued on January 8, 1988. When the matter came before the Court originally on December 11, 1985, Attorney (Under Seal) had merely been requested to voluntarily appear before the Grand Jury and to bring his client's files. No Grand Jury subpoena had been issued.

**17.** Although the Court recognizes the validity of the serious concerns addressed by the Department of Justice guideline and the appropriateness of the criteria itself, whether the subpoena in question was authorized or not has no addi-

It is against this weighty backdrop that the question is projected in this matter. Because of the grave concerns presented, the ABA has urged judicial approval—*after an opportunity for an adversarial proceeding*—prior to the issuance of an attorney subpoena and prior to the disruption of the integrity of the attorney-client relationship, and perhaps the integrity of the attorney himself,[18] if subjected to unfettered government subpoena power.

## III.

The United States Supreme Court has observed that "the purpose of the [attorney-client] privilege is to encourage clients to make full disclosure to their attorneys." [19] The unrestricted communications encouraged by the availability of the attorney-client privilege promotes "broader interests in the observance of law and the administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends on the lawyer's being fully informed by the client." [20]

Likewise, the Fourth Circuit has characterized the attorney-client privilege as

[p]art of the specialized federal common law in this country [which] protects the substance of communications made in confidence by a client to his attorney. Noting that the attorney-client privilege is the oldest of the privileges for confidential communications known to the common law, the Supreme Court recently reiterated that "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." (Citations omitted).[21]

 The establishment of a relationship between an attorney and the client does not *per se* establish a presumption of confidentiality. *In Re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984). Moreover, inasmuch as the privilege is inconsistent with the general duty to disclose and may be used to impede the investigation of the truth, the privilege must be strictly construed. *Id.* at 1355.

The classic test for application of the attorney-client privilege is set forth in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (Mass. 1950): "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in

---

tional persuasive effect. This is so because of the nonadversarial setting in which Federal prosecutors seek approval for their attorney subpoenas from other Executive Branch colleagues. *See* Criminal Justice Section Report, p. 9.

**18.** Assistant United States Attorney Sheehan urges in this matter that

[t]he only way for the attorney to appear and to *clear his name* is to appear and to discuss what was involved in their conversations. December 11, 1985 Hearing Transcript at p. 19 (Emphasis supplied). *See also In Re: Grand Jury Proceedings*, 674 F.2d 309 (4th Cir.1982). The Court would further note that although the scope of the government's inquiry is not precisely defined, it would not appear, nor has the government suggested, that its inquiry of Attorney (Under Seal) could be justified under the theory that the government seeks to unearth

some deeper conspiracy or target some other individual whose identity has not been revealed. *See United States v. Stewart*, 785 F.2d 306 (4th Cir.1986).

**19.** *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The Court further observed that

[a]s a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice.

**20.** *Upjohn Company v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

**21.** *United States v. (UNDER SEAL)*, 748 F.2d 871, 874 (4th Cir.1984).

some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982).

> [T]he privilege protects only confidential client communications; that is, communications not intended to be disclosed to third persons other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means.

*United States v. (UNDER SEAL),* 748 F.2d 871, 874 (4th Cir.1984).

> The difficult question is how to determine when a client intends or assumes that his communication will remain confidential. Although the existence of the attorney-client privilege does not alone raise a presumption of confidentiality, a layman does not expect his attorney to routinely reveal all that his client tells him. Rather than look to the existence of the attorney-client relationship or to the existence or absence of a specific request for confidentiality, we must look to the services which the attorney has been employed to provide and determine if those services could reasonably be expected to entail the publication of the clients' communications.

*Id.* at 875.

## IV.

With regard to the test quoted in *Jones, supra,* the government asserts that three of the elements—an expectation of confidentiality, the non-waiver of the privilege, and the absence of any criminal or fraudulent purpose—have not been satisfied. In support of its contention that the Intervenor did not have the expectation that communication with his attorney would remain confidential, the government urges that the obligation to disclose information as a part of the Intervenor's bankruptcy petition dissolves any expectation of confidentiality the Intervenor may claim. The government's reliance upon *Jones, supra,* and *In Re: Grand Jury Proceedings,* 727 F.2d 1352 (4th Cir.1984) is misplaced. An analysis of those cases reveals that the very purpose of those attorney-client relationships was for the preparation of documents which were intended by the clients to be disseminated to third parties.[22] The Court is not persuaded that the attorney-client relationship here, which encompassed the preparation of papers subsequently filed with the Bankruptcy Court, is analogous. If this were the case, no attorney-client relationship would remain confidential once papers were filed in the public record.

In support of its contention that the Intervenor has waived any attorney-client privilege he may have had, the government argues that the Intervenor gave testimony in the underlying bankruptcy matter concerning conversations he had with Attorney (Under Seal) during the preparation of the bankruptcy petition and related schedules. The extent and depth of waiver here is reflected, per the government's claim, by

---

**22.** In *Jones,*

> [t]he grand jury [had] been investigating the appellants for possible criminal activity in promoting and selling a tax shelter scheme. The appellants had consulted with the attorneys at various times, obtaining written legal opinions as to the federal income tax consequences flowing from the purchases of coal leases. The appellants included portions of the attorneys' letter opinions in brochures and other promotional printed material, which they distributed to third parties....

*Jones, supra,* at 1070–71.

In *In Re: Grand Jury Proceedings,* the petitioner, an attorney specializing in business and securities law, was retained in connection with a proposed private placement of limited partnership interests and had conversations with his clients, Margolin, Kimball and Chernack, regarding the preparation of a prospectus to be used in the enlistment of investors in the private placement. The proposed prospectus was never completed. In fact, the clients terminated their relationship with the petitioner two weeks after he was retained.

Finally, it is important to note that when the petitioner advised Margolin of the grand jury subpoena, the former client expressly waived any attorney-client privilege he may have had. The petitioner received no response from the other two former clients. Accordingly, when he appeared before the grand jury he asserted the attorney-client privilege with respect to Kimball and Chernack. *See In Re: Grand Jury Proceedings, supra,* at 1353–54.

the testimony of the Intervenor before the Bankruptcy Court. The transcript of the testimony, and resulting "waiver" of the attorney-client privilege, is presently available to the government and to the Grand Jury. Further recounting of such is unnecessary.

Additionally, the use of such Bankruptcy Court testimony, as an opening wedge to subpoena counsel, suggests an effort to expand the scope of such testimony (waiver) by seeking additional revelations from counsel, the effect of which being a designed erosion of the attorney-client privilege.

Finally, in support of its assertion of the applicability of the crime-fraud exception to the attorney-client privilege, the government properly maintains that a *prima facie* showing of intentional abuse of the attorney-client relationship, that is, communication designed to enable or assist the client in the commission of a crime, bars access to the privilege. *See Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469–470, 77 L.Ed.2d 993 (1932).

In order to establish its *prima facie* showing of fraud,[23] the government relies upon the findings of the Bankruptcy Court[24] and upon the *ex parte* affidavit of Special Agent Thomas F. Burgoyne filed in this matter under seal on December 12, 1985. Upon review of these matters and the government's assertion of its objective in seeking the testimony of Attorney (Under Seal), the Court does not believe that the government has established *prima facie* that the attorney-client communication at issue was to enable or assist the client in the commission of a crime. *See In Re Doe*, *supra*, at 1076. The transcript of the bankruptcy proceeding, as well as the testimony of Special Agent Burgoyne, are fully available to the Grand Jury and may properly speak for themselves, unhampered by the absence of the attorney's testimony.

■ Recognizing that the mere relationship of an attorney and his client does not create a presumption of confidentiality and that there may be many instances where the association of an individual with an attorney lacks the aura of confidentiality, and further recognizing that there may be instances of a waiver of the attorney-client privilege by subsequent conduct of the client, and finally, with full recognition that attorneys and clients cannot, under protection of law, maintain a confidential relationship that involves the intentional and wilful perpetration of crime and fraud, the Court is nonetheless satisfied that the facts presented by this matter compel the preservation of the confidences of the attorney-client relationship.

## V.

The Court, mindful that the mere issuance of the subpoena may undermine the integrity of the attorney-client relation-

---

**23.** As used in this context, the term "fraud" refers to fraud upon the judicial process. *See In Re Doe*, 662 F.2d 1073, 1079 n. 4 (4th Cir.1981).

**24.** The March 12, 1985 Memorandum Opinion of the Bankruptcy Court revoking the debtor's discharge reads, in pertinent part, as follows:

11 U.S.C. § 727(a)(4)(A) states:
"(a) The Court shall grant the debtor a discharge unless– ...
(4) the debtor knowingly and fraudulently, in or in connection with the case–
(A) made a false oath or act; ..."
In his voluntary Chapter 7 petition filed with this Court, [the Intervenor], debtor, certified "under penalty of perjury" that he had read the schedules filed and that they were true and correct to the best of his knowledge, information and belief. The debtor's only defense to not having listed his January, 1983 tort claim in his voluntary bankruptcy petition filed June 14, 1983 is that he forgot about the tort claim. In fact, the attorney representing the debtor in the bankruptcy proceeding was never advised of the debtor's tort claim so that an amendment could be made to the debtor's petition adding the tort claim as an asset. Conveniently, however, the debtor did remember in October, 1983 to retain an[other] attorney, ... who should have been aware of the debtor's bankruptcy filing, to represent him concerning the very same tort claim. From these simple undisputed facts, I can only conclude that the debtor, who is also an insurance adjuster and thoroughly familiar with personal injury claims, knowingly, intentionally and fraudulently made a false oath when he filed his voluntary Chapter 7 bankruptcy petition and failed to include his contingent and unliquidated claim....

ship,[25] has determined, under the facts as presented in this matter, that the Intervenor has asserted a viable attorney-client privilege. In order to ensure the proper functioning of the grand jury and yet shield the integrity of an attorney-client relationship from the potentially destructive effects of the service of a subpoena upon the attorney for information relating to the representation of his client,[26] we must now determine whether the United States has made a showing of relevance and legitimate and compelling need which, on balance, directs the Court to require the attorney to appear, be sworn, and produce testimony or documents, notwithstanding the existence of the attorney-client privilege.[27]

The arguments of counsel and also the briefs submitted herein focus primarily upon whether the attorney-client privilege attaches to the Attorney (Under Seal)—Intervenor relationship. In addition, the arguments touch upon the relevancy of the matter with respect to an ongoing grand jury investigation and also upon the necessity of having the attorney testimony compelled.

It would appear that the government seeks to have the attorney reveal communications had between himself and his client regarding disclosure obligations of bankruptcy law. Further, it would appear that this testimony is sought in order to assist the Grand Jury in determining the client's level of knowledge with respect to the information required by law to be disclosed in connection with the filing and subsequent proceedings in a bankruptcy case. Simply put, the government seeks to have the attorney relate to the Grand Jury whether he advised his client that a contingent claim in a personal injury action must be disclosed in the preparation of a bankruptcy petition and related schedules and that a knowing failure to do so could be found to be a fraud upon the Bankruptcy Court. This testimony is redundant as it is presently available to the Grand Jury via

**25.** *See In re Grand Jury Investigation,* 412 F.Supp. 943 (E.D.Pa.1976). At pages 945 and 946 the Court succinctly observed:

> [W]e are disturbed by the practice of calling a lawyer before a grand jury which is investigating his client, especially where the government does not have good grounds for belief that the lawyer possesses unprivileged, relevant evidence that cannot be obtained elsewhere. The dangers and disadvantages of the practice have been demonstrated in [various] cases ... The practice permits the government by unilateral action to create the possibility of a conflict of interest between the attorney and client, which may lead to a suspect's being denied his choice of counsel by disqualification. The very presence of the attorney in the grand jury room, even if only to assert valid privileges, can raise doubts in the client's mind as to his lawyer's unfettered devotion to the client's interests and thus impair or at least impinge upon the attorney-client relationship. (Citations omitted).

*See also In Re Special Grand Jury No. 81–1,* 676 F.2d 1005, 1009 n. 4 (4th Cir.1982); *United States v. Klubock,* 832 F.2d 649, 653–54 (1st Cir.1987).

**26.** *See e.g., United States v. Diozzi,* 807 F.2d 10 (1st Cir.1986).

**27.** *See In Re Special Grand Jury No. 81–1,* 676 F.2d 1005 (4th Cir. April 23, 1982). On a subsequent date the Fourth Circuit Court of Appeals, having been advised that the petitioner in the above-styled action had been indicted and was a fugitive from justice, dismissed the appeal

> with leave to said target, for good cause shown, to move to reinstate such appeal if he surrenders himself to federal custody before the expiration of thirty days from the date of this Order

and withdrew the opinion earlier filed. *In Re Special Grand Jury No. 81–1,* 697 F.2d 112 (4th Cir. October 7, 1982).

Although it would not appear that the earlier opinion may be afforded the customary precedential value, its analysis and reasoning nonetheless remain persuasive. *See In Re Grand Jury Subpoena (DOE),* 759 F.2d 968 (2d Cir. 1985). The reasons indicated for the withdrawal of the opinion do not weaken the substantive law expressed therein. Accordingly, the Court believes the opinion to be analogous to an opinion which is persuasive on a particular point of law but which has been "reversed on other grounds." As such the opinion remains

> the flagship for the argument that a Court must exercise its supervisory power to require the government to make a preliminary showing of relevance and need before issuing a subpoena to the attorney of a grand jury target....

Peirce and Colamarino, *Defense Counsel as a Witness for the Prosecution: Curbing the Practice of Issuing Grand Jury Subpoenas to Counsel for Targets of Investigations,* 36 Hastings L.J. 821, 822 n. 10 (1985).

the Intervenor's Bankruptcy Court testimony.

In response to the assertion by the Intervenor that the bankruptcy hearing transcript clearly demonstrates that the Intervenor did not discuss the contingent claim with Attorney (Under Seal), the same information which the government proposes to obtain from Attorney (Under Seal)'s testimony, the government counters that those transcripts contain "no definite statement as to the nature of the advice as to what the law requires from [Attorney (Under Seal)] to [the Intervenor]." [28]

Upon careful review of the transcript of the testimony of the Intervenor before the Bankruptcy Court on May 23, 1984 and the thirty questions tendered to the Court by the government on December 12, 1985, as well as the answers thereto given *in camera* by Attorney (Under Seal), the testimony of Attorney (Under Seal) in response to those questions would be merely cumulative and of minimal evidentiary value. Under these circumstances, compelling the attorney's appearance before the Grand Jury represents an unjustified, formidable assault upon the time-honored attorney-client privilege.

---

**28.** Hearing Transcript, December 11, 1985, at p. 14.