**In re Alberto DUQUE, Debtor.**

**No. 90–2109–CIV.**

United States District Court, S.D. Florida.

Oct. 11, 1991.

Robert A. Mark, Harold D. Moorefield, Jr., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Benedict P. Kuehne, Sonnett Sale & Kuehne, P.A., Miami, Fla., for appellants.

Manuel L. Dobrinsky and Roma W. Theus, II, Holland & Knight, Miami, Fla., for appellee.

## ORDER VACATING BANKRUPTCY COURT'S ORDER DENYING MOTION TO QUASH SUBPOENAS DUCES TECUM AND REMANDING WITH INSTRUCTIONS

ATKINS, Senior District Judge.

Appellants Benson Weintraub and Carlos Rodriguez appeal from a bankruptcy court order denying their motions to quash subpoenas *duces tecum* served upon them by appellee Paul Nordberg, bankruptcy trustee. The subpoenas seek information regarding appellants' criminal representation of debtor Alberto Duque for the purpose of locating funds owned or controlled by Duque to satisfy outstanding judgments filed against his estate. After carefully considering the initial and responsive briefs, appellants' pre- and post-argument notices of supplemental authority, oral argument, responsive memoranda, and relevant rules and caselaw, we are persuaded by two of appellants' arguments: that the bankruptcy court should have inquired into appellee's need for and the unavailability of the subpoenaed information as part of a determination of the subpoenas' reasonableness; and that the subpoena compliance procedure should be modified so as to require, prior to deposition, appellee to submit a list of deposition questions to appellants and the bankruptcy court to determine whether any of the testimonial or documentary information sought is privileged. Accordingly, the bankruptcy court's order denying appellants' motion to quash will be *vacated* and the case will be *remanded* to the bankruptcy court for proceedings consistent with this order.

### A.  BACKGROUND

This appeal involves subpoenas *duces tecum* served by appellee Paul Nordberg (appellee), bankruptcy trustee for Alberto Duque (Duque) and for entities that Duque controlled, on appellants Benson Weintraub and Carlos Rodriguez (collectively "appellants"). Appellants are lawyers who represent Duque solely in connection with his appeals from various criminal convictions. The subpoenas seek information such as testimony, engagement letters and evidence of payments for legal fees by or on behalf of Duque. While appellee claims that the sole purpose of the subpoena is to locate funds owned or controlled by Duque to satisfy outstanding judgments filed against his estate, appellants contend that appellee seeks the information also to determine whether Duque committed a fraud on the bankruptcy court by having legal fees paid by him or on his behalf without approval from the bankruptcy court.

Appellants moved to quash the subpoenas on the ground that they impermissibly infringe upon the attorney-client privilege,

the work-product privilege, the fifth amendment privilege against self-incrimination, the sixth amendment right to counsel of choice and the ethical obligation to guard client confidences and secrets; appellants also argued that appellee should be required to show need for and unavailability of the information sought. The bankruptcy court disagreed and denied the motions to quash:

> The Court finds that [appellants'] arguments are unpersuasive. The trustee, through his attorneys, is seeking to discover the assets of the debtor. Having stated a legitimate and proper purpose for service of the subpoena, the Court finds that the trustee's inquiry is legitimate and proper. In ruling on this Motion, the Court embraces the rationale of the Court's opinion in the case styled *In Re: Grand Jury Proceedings (Rabin)*, 896 F.2d 1267 (11th Cir.1990). *Vacated* [1990 WL 20033] 1990 U.S.App. *Lexis* 9982.
>
> The Court further finds that records of an attorney concerning fee payments are not privileged and do not constitute a sufficient reason to invoke the "last link" exception. If such records contain confidential information, this information may be redacted by Weintraub and Rodriguez and the redacted copies submitted to the Court for an *in camera* inspection.
>
> The Court rejects the Sixth Amendment argument set forth in the Motions to Quash. The Court finds that the Sixth Amendment argument is not ripe for adjudication at this time. The court also rejects the movant's argument based upon the Fifth Amendment. The Court finds that the Fifth Amendment is inapplicable in these circumstances, since the subpoena seeks to elicit no testimony from Duque.

Order Denying Motion to Quash at 1–2.

The court also set out the following procedure to protect any privileged material:

> If the documents which have been ordered to be produced contain communicative information to which the deponents assert a claim of privilege, the law firm representing the deponents may redact the communicative materials from the documents and submit the original documents to the court for *in camera* inspection. Also, if at the deposition the trustee's counsel propounds questions to which the deponents assert a privilege, the deponents should make a clear and concise record of those questions for submission to the court for ruling. In this manner, the clear and concise record can be submitted to the court for ruling on the claims of privilege both concerning the testimony and the documents.

*Id.* at 2–3. The present appeal became ripe for resolution on April 26, 1991, upon receipt of appellants' reply to appellee's response concerning post-argument notice of supplemental authority.

## B. CONTENTIONS

Appellants essentially argue that the subpoenas *duces tecum* are facially improper because they reach too broadly and encompass protected documents. More specifically, appellants argue the following: that appellee should be required to demonstrate a need for the information and the unavailability of the information from another source; that the subpoenas intrude upon the above-described privileges, rights and obligations enjoyed by appellants and/or Duque; and that appellee should be required to produce a list of questions prior to deposition so that appellants may object and the bankruptcy court may make a determination of privileges prior to deposition. Appellant Weintraub additionally argues that he is an improper subpoena target because he is neither an officer nor record custodian of his law firm.

In response, appellee argues the following: that no need for or unavailability of the information sought need be demonstrated; that none of the information sought is protected; that appellants have waived the privileges with respect to at least some of the information; that appellants' failure to request an *in camera* hearing in the bankruptcy court waives the right to one on remand; that the subpoenas are not facially invalid; and that appellant Weintraub's subpoena is not misdirected.

## C. DISCUSSION

We review the bankruptcy court's factual findings for clear erroneousness, *see United States v. Bay State Ambulance and Hosp. Rental Serv., Inc.*, 874 F.2d 20, 27 (1st Cir.1989), and legal determinations *de novo, see In re Grand Jury Subpoena (Bierman)*, 765 F.2d 1014, 1018 (11th Cir. 1985), *vacated in part*, 788 F.2d 1511 (11th Cir.1986). With these standards in mind, we consider in turn the following questions: first, whether a showing of need or unavailability is required on appellee's part; second, whether the subpoena compliance procedure set out by the bankruptcy court is adequate to protect the interests involved; third, whether appellants' failure to request an *in camera* hearing in the bankruptcy court waives their right to one on remand; fourth, whether the subpoenas are facially invalid; and fifth, whether appellant Weintraub's subpoena is properly directed.

### 1. Inquiry into Need and Unavailability Required

■ We first consider whether the bankruptcy court erred by failing to inquire into the need for and unavailability of the information sought. In relevant part, the bankruptcy court determined that the purpose of the subpoena—to discover assets of the debtor—was legitimate and proper. Although we agree with the bankruptcy court's characterization of the subpoena's purpose, we conclude as a matter of law that the bankruptcy court's inquiry should not have ended there. The court also should have considered whether appellants' compliance with the subpoena would be "unreasonable and oppressive" within the meaning of Rule 45(b), Federal Rules of Civil Procedure; this consideration entails inquiry into the trustee's need for and the

unavailability of the information sought. We base our conclusion on the relevant Bankruptcy Rules and Federal Rules of Civil Procedure as well as on significant differences between the issuance of subpoenas in the bankruptcy and grand jury contexts.

■ Rule 45(b), Federal Rules of Civil Procedure, authorizes a court to quash or modify an "unreasonable and oppressive" subpoena *duces tecum. See* Fed.R.Civ.P. 45(b). A determination of a subpoena's reasonableness requires the court to balance the interests served by complying with the subpoena against the interests served by quashing it. *See Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir.1959) (holding that court should balance competing interests);[1] *In re National Trade Corp.*, 28 B.R. 872, 874 (Bankr.N.D.Ill. 1983) (balancing "the benefit of the information against the burden of production"). This balancing of benefits against burdens calls for the court to consider, *inter alia*, whether the information is necessary and unavailable from any other source. *See In re Garcia*, 76 B.R. 68, 69 (E.D.Pa.) (affirming denial of motion to quash in part because subpoenaed lawfirm records "relevant *and* not available from any other source") (emphasis added), *aff'd*, 838 F.2d 460 (3d Cir.1987); *In re National Trade Corp.*, 28 B.R. at 875 (recognizing relevance of information and that "need for this information outweighs the burden to [appellants]"); *see also Herron*, 264 F.2d at 725 (suggesting that need is one factor of a subpoena's reasonableness). The incomplete record before the court does not reveal the precise nature of the proceedings underlying the challenged subpoenas.[2] Nevertheless, the court determines that application of rule 45(b)'s "unreasonable and oppressive" standard was required.[3] We

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent decisions handed down by the former Fifth Circuit before October 1, 1981.

2. Although appellants argued, both in the bankruptcy court and on appeal, that a showing of need and/or unavailability was required, neither appellants nor the bankruptcy court devoted much analysis to the argument.

3. The Bankruptcy Rules expressly provide that rule 45(b) applies in cases brought under the

code. Bankr.R. 9016; *In re Continental Forge Co.*, 73 B.R. 1005, 1007 (Bankr.W.D.Pa.1987). Rule 45(b) also may apply in proceedings supplementary to and in aid of execution of judgment. *See* Bankr.R. 7069(a) (providing that in supplementary proceedings, judgment creditor may obtain discovery by either Federal Rules or state practice). Finally, even where a subpoena is served to compel attendance at a rule 2004 examination, the reasonableness consideration of rule 45(b) applies. *See id.* 2004 (providing

therefore conclude as a matter of law that the bankruptcy court erred by not inquiring into the reasonableness of the subpoena, including the need for and unavailability of the information sought.

■ As the bankruptcy court recognized, no showing of need for or unavailability of the information sought is generally required in the grand jury context.[4] *See In re Grand Jury Investigation (Harvey),* 769 F.2d 1485, 1487 (11th Cir.1985) (noting that "[t]his court has conclusively rejected the requirement that the government make a preliminary showing of relevance and need before an attorney can be required to appear before a Grand Jury"). However, the absence of such a requirement in the grand jury context does not necessarily mean that no such requirement exists in the bankruptcy context. Rather, the absence merely reflects the balance struck between the competing interests implicated in the *grand jury* context, *see United States v. R. Enterprises, Inc.,* —— U.S. ——, 111 S.Ct. 722, 728, 112 L.Ed.2d 795 (1991) (balancing competing interests in grand jury proceedings); *In re Grand Jury Proceeding (Cherney),* 898 F.2d 565, 569 (7th Cir.1990) (recognizing such balance of interests). Based on two significant differences between the grand jury and bankruptcy contexts, we conclude that the rationale supporting not requiring a showing of need and unavailability with respect to grand jury cases does not apply in the bankruptcy context.

The first important difference involves the grand jury's "unique role in our criminal justice system," *R. Enterprises, Inc.,* 111 S.Ct. at 726 (quotation omitted); this role arises from "the historically grounded obligation of every person to appear and give his evidence before the grand jury," *United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973). "As a necessary consequence of [this unique investigatory role,] the grand jury paints with a broad brush." *R. Enterprises, Inc.,* 111 S.Ct. at 726 (quotations and citation omitted); *see In re Grand Jury Subpoena (Doe),* 781 F.2d 238, 248–49 (2d Cir.1985) (en banc) (noting that "investigative powers of the grand jury necessarily are broad so that it may carry out adequately its task of determining the existence of criminal activity"), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986).

The heavy burden placed on a party attempting to quash a grand jury subpoena reflects the unique societal interests furthered by the grand jury's function. *See In re Grand Jury Proceedings (Bank of Nova Scotia),* 691 F.2d 1384, 1387–88 (11th Cir.1982) (stating that to allow grand jury subpoena challenges based on lack of need and unavailability " 'would saddle a grand jury with minitrials and preliminary showings [and] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws' ") (quoting *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973)), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983); *see also Dionisio,* 410 U.S. at 9–10, 93 S.Ct. at 769 (noting that "while the duty [of a citizen to appear before a grand jury] may be onerous at times, it is necessary to the administration of justice"). Although we recognize the "important function of the [bankruptcy] trustee to expose chicanery and double-dealing [of the debtor]," *Herron,* 264 F.2d at 725, the interests implicated in the bank-

---

that non-debtor entity's attendance for examination and production of documents may be compelled by manner provided by rule 9016); *id.* 9016 (incorporating rule 45(b)'s provision of quashing or modifying unreasonable and oppressive subpoena *duces tecum*); *see also In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 712 (Bankr.S.D.N.Y.1991) (holding that rule 2004 requires court to balance competing interests, weighing necessity of information sought); *In re Fearn,* 96 B.R. 135, 137, 138 (Bankr. S.D.Ohio 1989) (denying motion to quash rule 2004 discovery while noting need for documents sought).

4. Our reading of the order suggests that the bankruptcy court based its determination that no showing of need or unavailability was required on the rationale found in grand jury subpoena cases. *See* Order Denying Motion to Quash at 1–2 (embracing rationale of *In re Grand Jury Proceedings (Rabin),* 896 F.2d 1267 (11th Cir.), *vacated,* 1990 WL 20033 1990 U.S.App.Lexis 8312 (11th Cir.1990) and not citing additional cases).

ruptcy setting are different from those arising in the grand jury setting.

A second important distinction between the present situation and one involving a grand jury subpoena involves the presence of institutional constraints designed to check the "danger ... that could be posed by unbridled subpoenas of counsel," *In re Klein*, 776 F.2d 628, 635 (7th Cir.1985). Because the Department of Justice (DOJ) represents the government in grand jury and other cases involving the United States, DOJ guidelines govern the determination whether to subpoena a target's lawyer. These guidelines provide in relevant part as follows:

> Because of the potential effects upon an attorney-client relationship that may result from the issuance of a subpoena to an attorney for information relating to the representation of a client, *it is important that the Department exercise close control over the issuance of such subpoenas.* Therefore, the following guidelines shall be adhered to by all members of the Department in any matter involving a grand jury or trial subpoena:
>
> A. In determining whether to issue a subpoena in any matter to an attorney for information relating to the representation of a client, *the approach must be to strike the proper balance between the public's interest in the fair administration of justice and effective law enforcement and individual's right to the effective assistance of counsel.*
>
> B. *All reasonable attempts shall be made to obtain information from alternative sources* before issuing a subpoena to an attorney for information relating to the representation of a client....
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> E. In approving the issuance of a subpoena in any matter to an attorney for information relating to the representation of a client, the Assistant Attorney General of the Criminal Division shall apply the following principles:
>
> (1) In a criminal investigation or prosecution, *there must be reasonable grounds to believe* that a crime has been committed and *that the information sought is reasonably needed* for the successful completion of the investigation or prosecution. The subpoena must not be used to obtain peripheral or speculative information.
>
> (2) In a civil case, *there must be reasonable grounds to believe that the information sought is reasonably necessary* to the successful completion of the litigation;
>
> (3) *All reasonable attempts to obtain the information from alternative sources shall have proved to be unsuccessful;*
>
> (4) *The reasonable need for the information must outweigh the potential adverse effects upon the attorney-client relationship.* In particular, the need for the information must outweigh the risk that the attorney will be disqualified from the representation of the client as a result of having to testify against the client[.]

Department of Justice, U.S. Attorney's Manual, *Policy With Regard to the Issuance of Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of Clients* (July 1985), *reprinted in In re Grand Jury Subpoena,* 679 F.Supp. 1403, 1408 n. 15 (N.D.W.Va. 1988).

The DOJ's promulgation of the guidelines stemmed from a recognition that allowing the unchecked subpoenaing of lawyers "will have a grave effect on our justice system as clients ... will eventually be less than candid with their attorneys or will consider foregoing legal advice altogether," *In re Klein*, 776 F.2d at 635. Our holding today flows in part from realization that allowing a private party such as appellee to subpoena a debtor's criminal counsel upon a mere showing of legitimate and proper purpose would have an effect similar to the one the DOJ has attempted to avoid by promulgating the guidelines. The absence of guidelines governing the issuance of subpoenas by *private* litigants in the bankruptcy arena militates in favor of treating the grand jury and bankruptcy situations differently, e.g., requiring a court reviewing a motion to quash a subpoena targeted at a lawyer to consider the

need for and unavailability of the information sought.

■ In light of the foregoing, we determine as a matter of law that the bankruptcy court's reliance on grand jury cases was misplaced and that the court should have considered whether the subpoenas were "unreasonable and oppressive" within the meaning of Rule 45(b). Consequently, the court erred by failing to make such an inquiry. On remand, the court's inquiry into the subpoenas' reasonableness should take into account the trustee's need for the information and the availability of the information from other sources; the inquiry also should consider the danger inherent in subpoenaing criminal counsel regarding his client's affairs.

2. Modification of Subpoena Compliance Procedure Required

■ We next consider whether the bankruptcy court's procedure provides adequate protection of the interests implicated by the challenged subpoenas—e.g., the various privileges raised by appellants. The bankruptcy court accurately concluded that a determination whether material is privileged or otherwise protected requires a particularized review of the material. *See United States v. Argomaniz*, 925 F.2d 1349, 1355–56 (11th Cir.1991) (holding that "court must review ... assertions of the privilege[s] on a question-by-question basis"). Such a determination also requires the development of a clear and concise record of questions posed and testimony and documents sought for the bankruptcy court's review. *See id.* A review of the allegedly privileged material "will best be accomplished in an *in camera* proceeding wherein [appellants are] given the opportunity to substantiate [their] claims of the privilege[s] and the court is able to consider the questions asked and the documents requested." *Id.* at 1355; *see also United States v. Nixon*, 418 U.S. 683, 714, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974); *In re Grand Jury Subpoena*, 831 F.2d 225, 227–28 (11th Cir.1987).

The bankruptcy court's procedure contemplates the appellants' initial production

of redacted documents and submission to questioning at a discovery deposition, during which appellants could refuse to answer appellee's questions on the basis of privilege, followed by the court's *in camera* review of the redacted material, unanswered questions, and responses proffered under seal. This procedure is well accepted in the context of grand jury subpoenas. *See id.* at 227 (recognizing general requirement that subpoenaed taxpayer "must present himself with his records for questioning, and as to each question and each record elect to raise or not raise the defense [of self-incrimination]") (quotation omitted). The procedure set out by the bankruptcy court also may provide adequate protection to privileged material in the instant case. *Cf. In re Grand Jury Subpoena (Bierman)*, 765 F.2d 1014, 1016 (11th Cir.1985), *vacated in part*, 788 F.2d 1511 (11th Cir.1986) (determining that transcript record of unanswered questions, followed by *in camera* review of allegedly privileged information, enables lower court to make necessary inquiry).

However, in light of the previously discussed differences between grand jury and bankruptcy subpoenas, we conclude as a matter of law that a modified procedure regarding the *testimonial* aspect of the challenged subpoena is required. Rather than compelling appellants to appear for deposition before asserting any applicable rights or privileges, the bankruptcy court shall require appellee to provide a list of questions to appellants prior to deposition; after reviewing the questions, appellants shall submit under seal both a proffer of any allegedly privileged testimony and any allegedly privileged portions of the documents sought, at the same time producing the redacted documents to appellee; the bankruptcy court shall then conduct an *in camera* review and/or hearing to determine whether any of the proffered testimony or document portions are protected from disclosure. This procedure should prove not only more judicially efficient, *see Argomaniz*, 925 F.2d at 1351–52 n. 5, 1355 (ordering *in camera* hearing following appellant's refusal to answer specific questions while suggesting that additional ques-

tions not asked because of appellant's refusal to answer preceding questions would be reviewed at hearing), but also more protective of the implicated privileges, rights and other interests, *see In re Grand Jury Subpoena*, 679 F.Supp. 1403, 1412 n. 25 (N.D.W.Va.1988) (noting that "very presence of attorney [at deposition], even if only to assert valid privileges, can raise doubts in the client's mind as to his lawyer's unfettered devotion to the client's interests and thus impair or at least impinge upon the attorney-client relationship") (quotation omitted).

■ With respect to the *document-production* aspect of the challenged subpoenas, however, we find the procedure provided adequate. Importantly, appellants have not alleged that the *act* of producing the subpoenaed documents will infringe upon a protected right or privilege. *Cf. Fisher v. United States*, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976); *Argomaniz*, 925 F.2d at 1356 (involving situation where act of production itself might be incriminating); *In re Grand Jury Subpoena Duces Tecum*, 754 F.2d 918, 920 (11th Cir.1985) (same). Instead, appellants assert only that the *contents* of the documents contain privileged material. Accordingly, the bankruptcy court's procedure—by which appellants may redact the communicative materials from the · documents produced to appellee and submit the original documents under seal for the bankruptcy court's *in camera* inspection— affords adequate protection against disclosure of any privileged material. *See Argomaniz*, 925 F.2d at 1355.

Once appellants have submitted for *in camera* review any redacted portions of the documents sought and any proffer of allegedly privileged testimony, the bankruptcy court will be able to determine whether appellants have met their burden of establishing that the information sought is privileged, *see In re Grand Jury Subpoena (Bierman)*, 788 F.2d at 1511; *In re Grand Jury*, 845 F.2d 896, 898 (11th Cir. 1988). The court also will be able to determine whether any of the privileges asserted has been waived or otherwise undercut, as urged by appellee at oral argument. It would be premature for this court to determine these issues at the present time.

### 3. No Waiver of Right to *In Camera* Hearing

■ We next determine whether appellants' failure to request an *in camera* hearing before the bankruptcy court constitutes a waiver of their right to one on remand. Although those asserting privileges in response to a subpoena generally are required to do so on a question-by-question and/or document-by-document basis, *see In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir.1987), a blanket assertion does not waive later, specific assertions under all circumstances, *see id.* at 228 (holding so under circumstances similar to the present ones). Moreover, appellants' instant argument focuses on more than the allegedly privileged nature of the information sought; it also focuses on the facial validity and procedural mechanisms of the subpoena. Accordingly, we determine that appellants have not waived the opportunity to make an *in camera* proffer of allegedly privileged information to the bankruptcy court on remand. *See* Order Denying Motion to Quash (contemplating *in camera* examination).

### 4. Subpoenas Not Facially Invalid

■ We next consider whether the challenged subpoenas are facially invalid because they reach too broadly, require disclosure of privileged information, or otherwise compel appellants to breach ethical obligations. As noted above, a determination of the existence of privileged material requires the development of a clear and concise record of questions posed and testimony and documents sought for the court's review. *See United States v. Argomaniz*, 925 F.2d 1349, 1355–56 (11th Cir.1991) (holding that "court must review ... assertions of the privilege[s] on a question-by-question basis"). Because no such record exists, a determination that the subpoenas reach too broadly or require disclosure of privileged material would be premature at this time.

The court does, however, appreciate appellants' concern that the subpoenas intrude upon their ethical obligation to guard the confidences and secrets of their client, which obligation is "broader than and independent of the attorney-client privilege," *United States v. Kasmir*, 499 F.2d 444, 453 (5th Cir.1974), *rev'd on other grounds sub nom. Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *see In re Grand Jury Subpoena*, 679 F.Supp. 1403, 1408 n. 15 (N.D.W.Va.1988) (noting lawyer's ethical obligation zealously to guard clients' secrets and confidences). Indeed, the disciplinary rules of the American Bar Association and The Florida Bar forbid an attorney from knowingly revealing either a "confidence" or a "secret" of a client. *See* Model Code of Professional Responsibility EC 4–4; *id.* DR 4–101(A); Model Rules of Professional Conduct Rule 1.6; Rules Regulating The Florida Bar Rule 4–1.6. Moreover, The Florida Bar has issued staff opinions *requiring* witness-attorneys to invoke the attorney-client privilege on behalf of clients when subpoenaed by the Internal Revenue Service for client-based information. *See, e.g.*, Florida Bar Staff Opinion TEO 87304 (April 21, 1987); *id.* 87008 (Sept. 4, 1986). However, by vigorously invoking the attorney-client and other privileges in response to the challenged subpoenas, appellants have fulfilled their ethical obligations. *See In re Grand Jury Subpoena*, 679 F.Supp. at 1407–08 (noting that attorney's disclosure of client's confidences and secrets not violative of disciplinary rules where court so orders). Accordingly, we conclude that the challenged subpoenas are not facially invalid.

#### 5. Subpoena Not Misdirected at Appellant Weintraub

Finally, we consider appellant Weintraub's argument that he lacks the authority to comply with the subpoena because he is neither a corporate officer nor the custodian of the records of his lawfirm, a professional corporation existing independently under Florida law. Weintraub presumably either received or created the documents sought and, as a partner in his firm, must have control and authority over the documents. *Cf. In re Grand Jury*

*Investigation (Heller)*, 921 F.2d 1184, 1189 (11th Cir.1991) (finding person with considerable control over law practice records to be valid substitute custodian for purposes of subpoena compliance). Accordingly, the subpoena was properly directed at appellant Weintraub. The caselaw he provides does not require a contrary conclusion. *See Essgee Co. of China v. United States*, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917 (1923); *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

### D. CONCLUSION

In light of the foregoing, it is ORDERED AND ADJUDGED that the bankruptcy court's order denying appellants' motions to quash subpoenas duces tecum is *VACATED*. It is further ORDERED AND ADJUDGED that the case is *REMANDED* to the bankruptcy court for proceedings consistent with the following:

(1) Initially, the bankruptcy court shall determine whether the subpoenas are unreasonable and oppressive within the meaning of Rule 45(b), Federal Rules of Civil Procedure; in making this determination, the court shall balance the trustee's interest in procuring the information against the burden imposed by appellants' compliance with the subpoenas, considering, *inter alia*, the need for and unavailability of the information and the danger inherent in subpoenaing criminal counsel regarding clients' affairs.

(2) If the court finds the subpoenas are not unreasonable and oppressive and therefore denies the motions to quash, the court shall modify its subpoena compliance procedure as follows: first, appellee shall provide a list of questions to appellants prior to deposition; second, after reviewing the questions, appellants shall submit under seal to the bankruptcy court both a proffer of any alleged privileged testimony and any allegedly privileged portions of the documents sought, at the same time producing the redacted documents to appellee; third, the bankruptcy court shall conduct an *in camera* review and/or hearing to determine whether any of the proffered testimo-

ny or document portions are protected from disclosure.[5]

DONE AND ORDERED.

---

5. It also is ORDERED AND ADJUDGED that Appellants' Motion to Strike Portions of Answer Brief of Appellee, *see* docket entry 16, is *DENIED.* Rather than having appellee resubmit a corrected answer brief, we have disregarded those portions of the answer brief containing inflammatory references or referring to matters outside the record below.