UNITED STATES of America and L. Simmons, Revenue Officer, of Internal Revenue Service, Plaintiffs–Appellees,

v.

Alberto E. ARGOMANIZ, Defendant–Appellant.

No. 89–5925.

United States Court of Appeals, Eleventh Circuit.

March 11, 1991.

**1350**

David M. Garvin, Philip T. Weinstein, Weinstein & Garvin, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Lisa A. Hirsch, Asst. U.S. Atty., Miami, Fla., Kevin M. Brown, Gary R. Allen, Chief, Charles E. Brookhart, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiffs-appellees.

Before CLARK and BIRCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

Appellant Alberto Argomaniz (Argomaniz) appeals from an order of the United States District Court for the Southern District of Florida, directing him to comply with a summons issued by the Internal Revenue Service (IRS). Compliance with this IRS summons could violate Argomaniz's fifth amendment privilege against self-incrimination. Accordingly, we REVERSE the district court's order and REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

IRS records indicate that Argomaniz did not file income tax returns for the years 1984 through 1987. Therefore, the IRS initiated an investigation into Argomaniz's tax liability for those years. As part of this investigation, the IRS issued an administrative summons, pursuant to 26 U.S.C. § 7602 [1], directing Argomaniz to appear before IRS Officer Simmons to give testimony and produce relevant records and documents.[2] On June 20, 1988, the summons

---

1. Section 7602 of the Internal Revenue Code provides:
   (a) Authority to summon, etc.—For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect to any internal revenue tax, or collecting any such liability, the Secretary is authorized—
   (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
   (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. The summons required Argomaniz to produce: .
   All documents and records you [Argomaniz] possess or control that reflect income you received for the year(s) 1984, 1985, 1986, [and] 1987. These documents and records include, but are not limited to: Forms W–2,

was served on Argomaniz. On July 12, 1988 and again on October 13, 1988, Argomaniz appeared before Simmons, in compliance with the summons, but refused to produce any of the summonsed documents. He claimed that production of the documents would violate his fifth amendment privilege against self-incrimination. Simmons then referred the matter to the United States Attorney for enforcement action. On February 21, 1989, the United States filed a petition in the United States District Court for the Southern District of Florida, pursuant to 26 U.S.C. §§ 7402(b)[3] and 7604[4], to enforce the summons. Attached to the petition was Simmons' declaration, stating that proper IRS summons procedure had been followed and that the documents and information sought by the

summons were necessary to the IRS investigation and not otherwise available. The district court referred the case to a magistrate, who ordered Argomaniz to show cause why he should not be compelled to comply with the summons. On April 18, 1989, the show cause hearing was held. Argomaniz again raised his fifth amendment privilege. After instructing Argomaniz that he could raise his fifth amendment privilege on a question-by-question basis, the magistrate entered an order directing Argomaniz to comply with the summons. On April 28, 1989, Argomaniz appeared before Simmons and again refused to answer any questions or produce any documents relating to his tax liability for the years 1984 through 1987.[5] The United

---

Wage and Tax Statement, Forms 1099 for interest or dividend income, employee earnings statements, and records of deposits with banks or other financial institutions. Also include any and all books, records, documents and receipts for income from, but not limited to, the following sources: wages, salaries, tips, fees, commissions, interest, rents, royalties, alimony, state or local tax refunds, annuities, life insurance policies, endowment contracts, pensions, estates, trusts, discharge of indebtedness, distributive shares of partnership income, business income, gains from dealings in property, and any other compensation for services (including receipt of property other than money). This includes any and all documents and records pertaining to any income you have assigned to any other person or entity.

3. Section 7402(b) of the Internal Revenue Code provides:

(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

4. Section 7604 of the Internal Revenue Code provides:

(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement.—Whenever any person summoned under section ... 7602 neglects or refuses to obey such summons, or to produce books, papers, records or other data, or to give testimony as required, the Secretary may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or the commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

5. The transcript of this hearing reads, in pertinent part, as follows:

Q [Simmons]: State your name.
A [Argomaniz]: Al Argomaniz.

\*    \*    \*    \*    \*    \*

Q: Your social security number?
A: 267–11–1925.
Q: Your home address, your present home address?
A: 601 Vila Bella....
Q: What city?
A: Coral Gables.
Q: Zip code?
A: 33143.

\*    \*    \*    \*    \*    \*

Q: Do you have your W–2 forms for the years 1984, '85, '86 and '87?

States then filed a motion requesting that the magistrate enter a report and recommendation. The magistrate complied and recommended that the district court direct Argomaniz to respond to the summons. In an order entered on August 7, 1989, the district court adopted the magistrate's report and recommendation. Argomaniz was ordered to comply with the summons within fifteen days. If he failed to do so, he would have twenty days to show cause why he should not be held in contempt. On August 22, 1989, Argomaniz appealed to this court from the district court's order, and filed a motion in the district court for a stay of enforcement of the order. By order dated October 10, 1989, the district court granted Argomaniz's motion and stayed enforcement of the summons pending his appeal, indicating that Argomaniz had shown a reasonable fear of criminal prosecution and that enforcement of the summons could force Argomaniz to waive his fifth amendment privilege against self-incrimination.[6]

## II. DISCUSSION

■ The fifth amendment privilege against self-incrimination[7] "protects a person ... against being incriminated by his own compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). It "can be asserted in any proceed-

A: This box together with the boxes which I have brought but can't carry upstairs at one time contain such as [sic] the requested documents which were under my custody or control at the time of service of the summons or at this time.

However, I respectfully decline to produce, identify or authenticate such documents based upon my Constitutional privelege [sic] against self incrimination.

In making this claim I rely upon the advice of counsel ....

\* \* \* \* \* \*

Q: Do you have your deposit information or bank records and other financial information with you for the periods '84, '85, '86 and '87?

\* \* \* \* \*. \*

A: Based upon my Constitutional rights, I refuse to answer that question.

Q: ... Can you name the employees that you have had, can you give me the names of the employees you have had over the last four years, '84, '85, '86 an[d] '87?

A: Based upon my Constitutional rights, I refuse to answer.

Q: Have you received any interest income?

A: Based upon my Constitutional rights, I refuse to answer the question.

Q: Do you have any other income sources other than salaries, wages?

A: Based upon my Constitutional rights, I refuse to answer the question.

Q: Have you made any payments to these taxes for '84, '85, '86 or '87?

A: Based upon my Constitutional rights, I refuse to answer the question.

\* \* \* \* \* \*

Q: You have the records and they apparently are sealed. Now I am going to ask you to turn them over to me—I will give you a document receipt—turn the sealed boxes over to me.

\* \* \* \* \* \*

A: This box together with the boxes that I brought, cannot carry upstairs at one time, contain such as [sic] the requested documents that were under my custody or control at the time of service of the summons or at this time.

However, I respectfully decline to produce, identify or authenticate such documents based upon my Constitutional privilege against self incrimination. In making this claim I rely upon the advice of counsel....

Q: All right. Well, I see no other recourse than to adjourn the meeting and proceed with the enforcement under the summons and the court order.

\* \* \* \* \* \*

Q: This concludes the interview.

**6.** In its October 10, 1989 order granting Argomaniz's motion to stay enforcement of the summons, the district court stated:

Under the U.S. Supreme Court's holding in *United States v. Doe*, 465 U.S. 605 [,104 S.Ct. 1237, 79 L.Ed.2d 552] (1983) Petitioner [Argomaniz] can demonstrate at least some likelihood of prevailing on his Fifth Amendment claim on appeal. *Furthermore, petitioner has shown more than a generalized fear of criminal prosecution.* He was notified that he was to be questioned regarding his failure to file income tax returns for a three year period. Certainly petitioner [Argomaniz] has good reason to believe that his answers may tend to incriminate him, whether or not criminal proceedings have been instituted against petitioner [Argomaniz]. By not staying enforcement of the summons pending appeal, this Court would, in effect, deprive petitioner [Argomaniz] of his appeal on his Fifth Amendment claim and would force him to waive his constitutional right against self-incrimination.

(emphasis added).

**7.** The fifth amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. Amend. V.

ing, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States,* 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). Accordingly, a taxpayer may invoke this privilege in response to requests for information in an IRS investigation.

◼ The taxpayer seeking the protection of this privilege to avoid compliance with an IRS summons "must provide more than mere speculative, generalized allegations of possible tax-related prosecution.... [T]he taxpayer must be faced with substantial and real hazards of self-incrimination." *United States v. Reis,* 765 F.2d 1094, 1096 (11th Cir.1985) (per curiam). Thus, the question before us is whether Argomaniz has shown such a "substantial and real hazard of self-incrimination" that the fifth amendment will excuse his noncompliance with the IRS summons. The answer to this question will depend on whether compliance with the summons would provide information incriminating to Argomaniz, and, if so, whether the privilege properly was invoked. *See Grosso v. United States,* 390 U.S. 62, 65, 88 S.Ct. 709, 712, 19 L.Ed.2d 906 (1968).

### A. *Compliance With The IRS Summons Could Be Incriminating*

◼ "The central standard for the ... application [of the fifth amendment privilege against self-incrimination is] whether the claimant is confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination." *Marchetti*

*v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). The privilege applies only in "instances where the witness has reasonable cause to apprehend danger" of criminal liability. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The government claims that because the IRS investigation was of a civil nature (its alleged purpose was to determine Argomaniz's civil tax liability for the years 1984 through 1987), Argomaniz's fear of self-incrimination is remote and speculative, and, therefore, not sufficient to invoke the fifth amendment privilege. However, the structure of the IRS, the nature of the summons procedure, and the facts of this case compel the conclusion that the government's position is incorrect. There can exist a legitimate fear of criminal prosecution while an IRS investigation remains in the civil stage, before formal transfer to the criminal division.[8] *See United States v. Sharp,* 920 F.2d 1167, 1170 (4th Cir.1990) (The privilege against self-incrimination "may apply in the context of an IRS investigation into civil tax liability, given the recognized potential that such investigations have for leading to criminal prosecutions.").

In *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court examined the nature of the IRS investigatory system, and, relying in part on the legislative history of the Internal Revenue Code, concluded that the system's "criminal and civil elements are inherently intertwined." *Id.* at

---

**8.** The government relies on the following language from our decision in *United States v. Reis,* 765 F.2d 1094 (11th Cir.1985) (per curiam), to support its position that there can never be a reasonable fear of criminal prosecution while an IRS investigation is still in the civil stages:

> When the I.R.S. properly issues a summons in support of a civil investigation to determine a taxpayer's legal liability, the mere fact that evidence *might* be used in a later criminal prosecution will not support a blanket claim of self-incrimination.

*Id.* at 1096 (emphasis in original). However, this passage does not state that the privilege may *never* be invoked in a civil IRS investigation. *See United States v. Cuthel,* 903 F.2d 1381, 1384 (11th Cir.1990) ("A witness may properly invoke the privilege when he 'reasonably appre-

hends a risk of self-incrimination, ... though no criminal charges are pending against him ... and even if the risk of prosecution is remote.'" (quoting *In re Corrugated Container Anti–Trust Litigation,* 620 F.2d 1086, 1091 (5th Cir.1980), *cert. denied sub nom. Adams Extract Co. v. Franey,* 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981))). Instead, it stands for the proposition that a *blanket* claim of self-incrimination will not be successful in a civil IRS investigation. *See United States v. Allee,* 888 F.2d 208, 212 (1st Cir.1989) (citing *Reis* for the proposition that a blanket fifth amendment objection to an IRS summons is not a viable defense). To the extent that *Reis* could be read otherwise, it is *obiter dictum.* Below we discuss the government's argument that Argomaniz's fifth amendment claim was a blanket claim.

309, 98 S.Ct. at 2363. The IRS summons procedure reflects the interrelationship of these components. The IRS summons served on Argomaniz required that he produce all documents and records related to income he received during the years 1984 through 1987.[9] If Argomaniz did produce these documents, assuming that he did possess them, then both the civil and criminal aspects of the IRS system would be implicated. The IRS would be able to determine Argomaniz's civil tax liability for the years in question. However, although "[i]t is true that a 'routine tax investigation' may be initiated for the purpose of a civil action rather than criminal prosecution[,] ... tax investigations frequently lead to criminal prosecutions." *Mathis v. United States*, 391 U.S. 1, 4, 88 S.Ct. 1503, 1505, 20 L.Ed.2d 381 (1968) (holding that even in routine tax investigations a person in custody, regardless of the reason for his detention, must be given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Thus, production of these documents and records, if incriminatory (as will be determined by the *in camera* inspection directed below), also likely would cause Argomaniz to incur criminal liability for violation of the Internal Revenue Code.

Section 7203 of the Internal Revenue Code[10] makes willful failure to file an income tax return a crime. Accordingly, production of these documents would establish two of the essential elements of this crime—it would prove that Argomaniz did have taxable income for the years in question, yet failed to file income tax returns. Under these circumstances, this civil tax "investigation has become 'an inquiry with dominant criminal overtones' ... [such that Argomaniz was] entitled to raise his fifth amendment objections." *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969). The criminal penalties with which Argomaniz was faced "were scarcely 'remote possibilities out of the ordinary course of the law' " and his "hazards of incrimination can only be characterized as 'real and appreciable.' " *Grosso v. United States*, 390 U.S. 62, 66, 67, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968). *See also United States v. Moss*, No. 88–2676 (D.Md. July 24, 1990) (WESTLAW, 1990 WL 169256); *United States v. Cates*, 686 F.Supp. 1185 (D.Md.1988). Therefore, Argomaniz's apprehension of criminal prosecution clearly was reasonable, assuming that the records in his possession would be incriminatory under the circumstances existing at the time of production.[11]

**9.** *See supra* note 2.

**10.** 26 U.S.C. § 7203 reads as follows:

§ 7203. Willful failure to file return, supply information, or pay tax

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution.

26 U.S.C. § 6012 reads as follows:

§ 6012. Persons required to make returns of income

(a) General rule. Returns with respect to income taxes under subtitle A shall be made by the following:

(1)(A) Every individual having for the taxable year gross income which equals or exceeds the exemption amount ...

**11.** In the "Petition to Enforce Internal Revenue Summons" Simmons filed on February 21, 1989, she stated: "The books, records, papers, and other data sought by the summons are not already in the possession of the Internal Revenue Service." In the Declaration attached to this petition, Simmons declared, under penalty of perjury, that "[t]he books, papers, records or other data sought by the summons are not already in the possession of the Internal Revenue Service, or are not readily accessible to us." It should be noted that it would be improper for the IRS to seek enforcement of a summons, the objects of which already were in its possession. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Therefore, because the IRS, by its own declaration, has no other ready access to the summonsed documents, Argomaniz's production of these documents, assuming the district court finds them to be in Argomaniz's possession, very well could be incriminatory.

■ We stress, however, that it is the role of the district court, *not* the taxpayer, to evaluate the taxpayer's claim of incrimination and determine whether it is reasonable. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself— his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified...." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). *See also Sharp*, 920 F.2d at 1170 ("Whether there is sufficient hazard of incrimination is of course a question for the courts asked to enforce the privilege.").

■ In this case, the district court did opine that Argomaniz would have a legitimate fear of criminal indictment if he complied with the IRS summons. In its order granting Argomaniz's motion for a stay of enforcement of the summons pending this appeal, the district court stated that Argomaniz had "shown more than a generalized fear of criminal prosecution" and had "good reason to believe that his answers may tend to incriminate him...."[12] Although this finding does suggest that Argomaniz was entitled to raise his fifth amendment privilege, it does not sufficiently determine the applicability of Argomaniz's privilege against self-incrimination to the summons at issue in this case. "A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir.1976). *See United States v. Rue*, 819 F.2d 1488 (8th Cir.1987).

■ The district court must review Argomaniz' assertions of the privilege on a question-by-question basis. This will best be accomplished in an *in camera* proceeding wherein Argomaniz is given the opportunity to substantiate his claims of the privilege and the district court is able to consider the questions asked and the documents requested by the summons. *See United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir.1969) ("The district court may then determine by reviewing ... [the taxpayer's] records and by considering each question whether, in each instance, the claim of self-incrimination is well-founded.").[13] The district court already has determined that Argomaniz does face a real and substantial hazard of incrimination. However, we must remand this case to the district court, to enable that court to conduct an *in camera* proceeding, on a question-by-question basis, to determine the actual extent to which Argomaniz may rely on his fifth amendment privilege to avoid compliance with the IRS summons. Stated differently, the district court must ascertain: first, whether the taxpayer has the records sought and, second, whether under the existing circumstances they are incriminatory.

B. *The Fifth Amendment Privilege May Exist*

Even though compliance could be incriminating, the government argues that Argomaniz must comply with the IRS summons because Argomaniz did not properly invoke his fifth amendment privilege. First, the government claims that the fifth amendment is not applicable to this situation because the contents of business records are not privileged. Second, the government asserts that Argomaniz made an impermissible blanket claim of self-incrimination. Both of these arguments are without merit.

■ The government correctly states that the contents of voluntarily prepared business records are not protected by the fifth amendment privilege against self-incrimination. *See United States v. Doe*, 465 U.S. 605, 610–12, 104 S.Ct. 1237, 1241–42,

---

12. *See supra* note 6.

13. As the Second Circuit observed in *Estate of Fisher v. Commissioner of Internal Revenue*, 905 F.2d 645, 650 (2d Cir.1990), similar *in camera* proceedings have been repeatedly looked upon with favor by the Supreme Court. *See also In re*

*Grand Jury Subpoena*, 831 F.2d 225, 226 (11th Cir.1987) (directing the district court to conduct either a hearing or an *in camera* inspection on a document-by-document basis to ascertain the applicability of the attorney-client privilege).

79 L.Ed.2d 552 (1984). However, Argomaniz is not invoking his privilege as to the *contents* of the documents described in the IRS summons, but as to *the act of producing* the documents. The Supreme Court "has emphasized that the mere act of producing documents whose contents were not privileged could be sufficiently testimonial and incriminating in nature to trigger the fifth amendment privilege." *In re Grand Jury No. 86-3 (Will Roberts Corp.)*, 816 F.2d 569, 571 (11th Cir.1987) (citing *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) and *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). To be testimonial, a "communication must itself, explicitly or implicitly, relate a factual assertion or disclose information," *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988); it must "add ... to the sum total of the government's information...." *Fisher v. United States*, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1975).

By producing documents in compliance with the IRS summons, Argomaniz would be establishing the existence and authenticity of the documents listed in the summons, as well as verifying that these documents were in his possession. *Doe v. United States*, 487 U.S. 201, 209, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1987). He would actually be informing the government that he had income in the years in question yet failed to file income tax returns. This act of production would be sufficiently testimonial and incriminating to activate Argomaniz's fifth amendment privilege.

▉▉▉ The government's final argument, that there was no fifth amendment justification for Argomaniz's blanket invocation of the privilege against self-incrimination, is also without merit. It is true that a blanket refusal to produce records or to testify will not support a fifth amendment claim. *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir.1969). However, Argomaniz did not refuse to comply with the summons in a blanket manner. Instead, Argomaniz followed the general rule that a taxpayer "must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense." *Id.* Argomaniz answered the non-incriminating questions posed by the IRS officer, and, in response to each incriminating question or document request refused to answer and cited his privilege against self-incrimination. When the IRS officer realized that Argomaniz would raise the privilege in response to each of her document requests and to each of her questions concerning Argomaniz's tax liability for the years in question, the IRS officer terminated the interview.[14] Argomaniz could not respond to questions that he was not asked. Thus, the effect of the interview was as if the IRS officer had asked all relevant questions and for each document listed in the summons, and Argomaniz had responded by repeatedly raising his fifth amendment privilege in response. Under the circumstances in this case, a blanket invocation of the privilege against self-incrimination did not occur.

### III. CONCLUSION

Because compliance with the IRS summons could violate Argomaniz's fifth amendment privilege against self-incrimination and because the district court failed to make a particularized inquiry necessary to determine whether Argomaniz properly refused to comply with the summons, we REVERSE the district court's order compelling Argomaniz to comply with the summons. We REMAND this matter to the district court with instructions to determine, through an *in camera* inspection, the existence of Argomaniz's fifth amendment privilege in this case.

REVERSED and REMANDED.

---

**14.** *See supra* footnote 5 for the pertinent transcript of Argomaniz's appearance before the IRS officer.