UNITED STATES of America, Petitioner–Appellee,

v.

Robert L. DROLLINGER, Respondent–Appellant.

No. 94–56754.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1995.

Decided April 5, 1996.

James T. Duff, Duff & Smith, Los Angeles, California, for respondent-appellant.

Gary R. Allen and Patricia Bowman, Tax Division, United States Department of Justice, Washington, DC, for petitioner-appellee.

Before: BROWNING and PREGERSON, Circuit Judges, and TANNER,* District Judge.

PER CURIAM:

Robert Drollinger appeals a district court order remanding him to custody for civil contempt for failing to comply with two Internal Revenue Summonses.[1] We vacate the order and remand for further proceedings.

## I.

To determine Drollinger's federal tax liability for the years 1977 through 1992, the Internal Revenue Service (IRS) issued and served two summonses directing Drollinger to appear for examination and produce certain documents. Drollinger did not appear. The district court ordered him to show cause why he should not be compelled to obey the summonses. Drollinger failed to appear at a hearing on the order to show cause. The district court issued an order enforcing the summonses.

Drollinger appeared pursuant to the enforcement order, but did not testify or produce documents. Instead, Drollinger delivered an "opening statement," questioning the agents' authority and his liability and referring generally to the Fifth Amendment privilege against self-incrimination.[2] He later denied being a taxpayer, but told the agents he would "confess everything" if the court's order "superseded" the Fifth Amendment and asked the agents if it did. The parties then engaged in a general discussion as to whether producing documents would constitute compelled self-incrimination. Drollinger asked the agents to produce a "delegation of authority." No resolution was reached, and the meeting ended. At no time during the meeting did the IRS agents ask Drollinger specific questions relating to his tax liability.

The district court ordered Drollinger to show cause why he should not be held in contempt and sanctioned for failing to comply with the enforcement order. Drollinger did not appear at the hearing on the order to show cause. The district court held him in contempt and ordered him arrested and incarcerated.

The district court held several hearings regarding Drollinger's failure to purge himself from contempt. At the first purgation hearing, Drollinger's counsel expressed concern that the district court believed Drollinger had waived his Fifth Amendment privilege. Counsel informed the court that Drollinger might wish to raise the privilege with respect to specific questions when such questions were asked. The court responded that no specific questions were before the court and the court could not "rule in advance" whether it would sustain a claim of privilege. The court suggested the issue be resolved when specific questions were posed to Drollinger with counsel present.

Drollinger then met with IRS officers and was asked specific questions. Drollinger answered some of the questions but invoked the Fifth Amendment on a question-by-question basis as to others. Drollinger also produced some, but not all, of the documents requested in the summonses. He did not invoke the Fifth Amendment privilege as to any documents.

The district court released Drollinger on a bond, but ordered him to appear again before the IRS to give additional testimony and produce additional documents. Drollinger appeared with counsel. He declined to answer most questions on self-incrimination grounds; he produced no additional documents, saying he "couldn't find any."

Drollinger petitioned the court for an order purging him from contempt. In his sup-

* The Honorable Jack E. Tanner, Senior Judge, United States District Court for the Western District of Washington, sitting by designation.

1. On April 28, 1995, Drollinger filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in United States Bankruptcy Court for the Central District of California (No. LA95–20765LF). This petition was dismissed on July 19, 1995, and has no impact on the appeal.

2. Drollinger's "opening statement" included the following:

... I'd like to enter on the record that the federal constitutional provision that no one can be compelled to be a witness against himself must be applied in a broad spirit to secure immunity against self-accusation....

...

The thought occurs to me and should occur to you by now that this opening statement ... is demonstrated and showing cause why testimony and production ... should not be compelled....

porting memorandum, Drollinger said he had no additional documents and that an *in camera* hearing should be held regarding his claim of self-incrimination. The district court asked Drollinger's counsel if Drollinger was going to "insist on maintaining himself in terms of the Fifth Amendment." Counsel said yes. The court responded, "Then he's going to jail," and remanded Drollinger to custody for civil contempt. Drollinger appeals this order.[3]

## II.

 The Government contends Drollinger is precluded by *res judicata* from asserting a Fifth Amendment claim in defense of his refusal to provide oral testimony. We conclude that although Drollinger failed to timely appeal both the district court's original enforcement order and initial order holding him in contempt, his claim of privilege is not barred.

 A claim of Fifth Amendment privilege may be asserted if there are "substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and unsubstantial," that information sought in an IRS summons might be used to establish criminal liability. *United States v. Rendahl,* 746 F.2d 553, 555 (9th Cir.1984) (quoting *United States v. Neff,* 615 F.2d 1235, 1239 (9th Cir.1980)) (internal quotations omitted). The defendant must have " 'reasonable cause to apprehend [such] danger from a direct answer' to questions posed to him." *Neff,* 615 F.2d at 1239 (quoting *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). In determining whether a real and appreciable danger of incrimination exists, the trial court must examine "the questions, their setting, and the peculiarities of the case." *Neff,* 615 F.2d at 1240.[4]

 As we have held, "[a] proper application of this standard requires that the Fifth Amendment be raised in response to specific questions propounded by the investigating body." *United States v. Pierce,* 561 F.2d 735, 741 (9th Cir.1977). Only after an invocation of the privilege with respect to a specific question can a reviewing court determine whether a responsive answer might lead to injurious disclosures. *Id.; see also United States v. Bell,* 448 F.2d 40, 42 (9th Cir.1971). Thus, "[t]he only way the Fifth Amendment can be asserted as to testimony is on a question-by-question basis." *United States v. Bodwell,* 66 F.3d 1000, 1001 (9th Cir.1995). A taxpayer must "present himself for questioning, and as to each question elect to raise or not to raise the defense. The District Court may then determine by considering each question whether, in each instance, the claim of self-incrimination is well-founded." *Bell,* 448 F.2d at 42.

The availability of Drollinger's Fifth Amendment claim turns on whether that claim was or could have been litigated in prior proceedings. *Bodwell,* 66 F.3d at 1001. Drollinger did not appear at the enforcement proceedings and did not appeal the enforcement order. Failure to appeal a final order enforcing an IRS summons does not necessarily bar raising the Fifth Amendment privilege in contempt proceedings. *Rendahl,* 746 F.2d at 555. A defendant who does not appear cannot properly assert the Fifth

---

3. Only Drollinger's appeal from the renewed order of contempt is properly before us. Drollinger's appeals from other orders are either taken from an unappealable order, *Steinert v. United States,* 571 F.2d 1105, 1107 (9th Cir.1978) (compliance order is not appealable); untimely; or abandoned due to failure to argue in Drollinger's briefs, *Collins v. City of San Diego,* 841 F.2d 337, 339 (9th Cir.1988).

4. Relying on *United States v. Carlson,* 617 F.2d 518 (9th Cir.1980), the Government argues that, whether or not Drollinger can establish a real and appreciable risk of incrimination, public policy precludes application of the Fifth Amendment because Drollinger is a tax protestor. *Carlson* held that "an individual who seeks to frustrate the tax laws by claiming too many withholding

exemptions, with an eye to covering that crime and evading the tax return requirement by assertion of the Fifth Amendment, is not entitled to the amendment's protection." 617 F.2d at 523. Although Drollinger failed to file returns, there is no evidence he engaged in such a calculated scheme to evade the law. Moreover, this court has consistently applied the Fifth Amendment in analogous contexts involving IRS investigations into civil tax liability. *See e.g., United States v. Bodwell,* 66 F.3d 1000 (9th Cir.1995); *United States v. Rendahl,* 746 F.2d 553 (9th Cir.1984). Even if *Carlson* were applicable, it is limited to taxpayer claims of fear of prosecution for past *tax* crimes. Drollinger fears prosecution for both tax and non-tax crimes.

Amendment in response to particular questions. *Id.* Thus, Drollinger's Fifth Amendment challenge would have been premature on appeal from the enforcement order. *Id.*

Similarly, Drollinger did not relinquish his Fifth Amendment claim by failing to appear at the initial contempt proceedings or timely appeal the initial order of contempt. Drollinger made himself available at the compliance meeting, but could not have invoked the privilege on a question-by-question basis because no relevant and specific questions were asked. *Bodwell,* 66 F.3d at 1002 n. 1 (citing *United States v. Argomaniz,* 925 F.2d 1349, 1356 (11th Cir.1991)); *accord United States v. Theep,* 502 F.2d 797, 799 (9th Cir.1974) (IRS agent failed to make the specific inquiries required to afford appellants the opportunity to make appropriate objections). Even if Drollinger had appeared at the subsequent contempt hearing, litigation of his Fifth Amendment claim still would have been premature.[5] As the district court acknowledged at the first purgation hearing, it could not rule in advance on specific questions that had not yet been asked.

Because Drollinger did not have an earlier opportunity to answer specific questions, he was entitled to raise and litigate his Fifth Amendment claim when those questions were finally asked during the purgation proceedings.

## III.

▮▮ On the first occasion on which the Government asked Drollinger specific questions, Drollinger properly invoked the Fifth Amendment privilege on a question-by-question basis. Since Drollinger was not precluded from raising the privilege at this time, the district court should have undertaken a particularized inquiry into the merits of his claim.[6] As the Eleventh Circuit held in *United States v. Argomaniz,* the required inquiry is best made in an *in camera* proceeding, where the defendant is given "the opportunity to substantiate his claims of the privilege and the district court is able to consider the questions asked and the documents requested by the summons." 925 F.2d at 1355. We therefore remand to permit the district court to conduct a hearing regarding the validity of Drollinger's Fifth Amendment objections as to each specific question posed by the IRS.

## IV.

▮ The Government contends the renewed order of contempt was also based on Drollinger's failure to produce additional documents. Drollinger claims he turned over all the documents he possessed.

▮ Present inability to comply is a complete defense to civil contempt. *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552–53, 75 L.Ed.2d 521 (1983). Drollinger has the burden of producing evidence of his present inability to turn over the documents the IRS still seeks. *Id.* Ability to comply is the crucial inquiry, and "a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey." *Donovan v. Mazzola,* 761 F.2d 1411, 1418 (9th Cir.1985) (citations omitted).

---

5. Drollinger did not preclude the IRS agents from asking specific questions by making a repeated or unequivocal blanket refusal to answer *any* question as the taxpayers did in *United States v. Brown,* 918 F.2d 82, 84 (9th Cir.1990) (appellant made repeated refusal to answer any questions though he could have made a question-by-question claim of privilege); and *United States v. Pierce,* 561 F.2d 735 (9th Cir.1977) (witness made improper blanket assertion of Fifth Amendment privilege by refusing to testify as to his financial condition). Drollinger appeared at the compliance meeting as ordered, with documents, and showed a willingness to answer questions that would not subject him to self-incrimination. In such circumstances, it was incumbent upon the Government to ask specific questions. The Government inquired regarding possible documents, but did not ask Drollinger specific questions regarding his tax liability. The Government cannot now claim Drollinger asserted a blanket refusal to provide oral testimony.

6. *See Neff,* 615 F.2d at 1239–40; *United States v. Allee,* 888 F.2d 208, 214 (1st Cir.1989) ("[I]f the district court finds that [the defendant] interposed an objection, based on the Fifth Amendment privilege against self-incrimination, on a question-by-question ... basis, it must evaluate the validity of such objection on the same particularized basis."); *Argomaniz,* 925 F.2d at 1355 (quoting *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir.1976)) ("A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded.").

The district court made no finding regarding Drollinger's ability to comply despite affidavits by Drollinger explaining that many of his records have been lost or discarded over the years and describing his unsuccessful efforts to locate additional documents. It will be pointless to demand that Drollinger produce the additional documents if production of those documents is factually impossible. *Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552–53. Accordingly, we remand for the district court to determine, based on any evidence the parties may wish to present, whether Drollinger has purged himself from contempt with respect to documents.

* * *

The December 6, 1994 order remanding Drollinger to custody for contempt is VACATED, and the cause REMANDED for further proceedings consistent with this opinion.