IN RE: Deborah A. SAUNDERS, Debtor.

Guy G. Gebhardt, Acting U.S. Trustee, Plaintiff,

v.

Deborah A. Saunders, Defendant.

Case No.: 12–63663
**ADVERSARY PROCEEDING**
Case No.: 13–5337–JRS

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed April 3, 2015

Thomas Wayne Dworschak, Office of the U.S. Trustee, Atlanta, GA, for Plaintiff.

Deborah A. Saunders, pro se.

## ORDER

James R. Sacca, U.S. Bankruptcy Court Judge

Currently before the Court are the U.S. Trustee's (the "Trustee") Motion to Compel the Defendant to Answer Oral Questions at a Deposition (Doc. 83) and Addendum to Motion to Compel the Defendant to Answer Oral Questions at a Deposition (Doc. 96) (collectively, the "Motion"). The Court must consider three issues to resolve the motion: (a) whether the Defendant may invoke her Fifth Amendment privilege against self-incrimination in response to certain questions asked by the Trustee, (b) if she may invoke the privilege here, whether she waived the right to do so and (c) whether the Debtor should be compelled to answer certain questions she contends are irrelevant.

### Facts

Defendant filed for chapter 7 relief on June 1, 2012. She received a discharge on September 25, 2012. Subsequently, on September 24 2013, within the one year period required by the Code, the Trustee

brought this adversary proceeding seeking to revoke her discharge pursuant to § 727(d)(1). The complaint alleges that the Defendant failed to disclose prepetition income, assets, and causes of actions on her petition, Schedules, and Statement of Financial Affairs, as well as at the § 341 meeting of creditors and, therefore, her discharge should be revoked because it was obtained through fraud. (Compl.¶¶ 44–49).

With respect to the matters involving the assertion of the Fifth Amendment privilege against self-incrimination, the privilege was asserted at an oral examination with respect to Defendant's response to Question 18 on her Statement of Financial Affairs filed in her bankruptcy case under penalty of perjury. In Question 18, a debtor is required to answer whether she was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full or part time within six years immediately preceding the commencement of the case. Defendant's response to this question was to check the box marked "None."

The questions to which Defendant refused to answer on the grounds of relevancy involved her responses to Question 1 on her Statement of Financial Affairs and those areas on her Schedule B–Personal Property. In Question 1 on the Statement of Financial Affairs, a debtor is required to disclose her gross income from employment or operation of a business, trade or profession from (a) the beginning of the calendar year to the petition date, which in this case was 2012, and (b) the two calendar years prior to the calendar year in which the petition was filed, which in this

case were 2010 and 2011. Defendant's response to this question, which was not broken down by year, was simply "$12,480 Social Security." [1]

With respect to Schedule B–Personal Property, a debtor is required to disclose "other contingent and unliquidated claims of every nature, including ... counterclaims ..." as well as "other personal property of any kind not already listed here." Defendant checked "None" under each of those categories. About two months after her discharge was entered, Defendant was a named plaintiff in a class action in which damages were sought in excess of $4 billion.

In January 2015, the Defendant was examined under oath at a deposition by the Trustee. During the examination, the Trustee questioned the Defendant specifically about her response to Questions 18 and areas related to her responses to Question 1 and disclosures on Schedule B. The questions and her responses are attached to the original Motion as Exhibit A. With respect to the questions to which she asserted her Fifth Amendment privilege, her testimony about related matters before and after invocation of the privilege is attached to the Addendum as Exhibits B and C, respectively. When Defendant claimed her Fifth Amendment privilege, she would not answer the questions specifically about her answer to Question 18. The Defendant did, however, answer questions regarding her involvement in the International Environmental Association, her involvement in conducting forensic loan audits and analyses, and various forensic loan auditing courses for which she was an instructor within six years preceding the commencement of her bankruptcy case.

---

1. Question 2 on the Statement of Financial Affairs requires the debtor to disclose income from sources other than those described in

Question 1. It seems social security income would more appropriately be disclosed in response to Question 2.

Throughout the examination there were multiple other questions that the Defendant refused to answer on grounds that they were irrelevant. For example, she also would not answer for whom she performed services and how much she was paid, nor did she answer some questions about the lawsuit she filed shortly after her discharge.

Thereafter, the Trustee filed his motion to compel. A hearing was held on the motion on March 3, 2015, at which both the Defendant and counsel for the Trustee appeared. After considering all matters of record and the arguments of the parties, the Court stated on the record the reasons it would compel the Defendant to answer the questions to which the Defendant objected on the grounds of relevancy and order her to answer those questions and reasonable follow up questions. The Court took under advisement that portion of the Motion in which the Trustee sought an order compelling the Defendant to answer the questions to which she invoked her Fifth Amendment privilege. The Court invited the parties to submit briefs on those Fifth Amendment issues. Thereafter, the Trustee filed his Addendum, but the Defendant filed no further pleadings or authorities.

### Discussion

 "The fifth amendment privilege against self-incrimination "protects a person … against being incriminated by his own compelled testimonial communications." *U.S. v. Argomaniz*, 925 F.2d 1349, 1352 (11th Cir.1991) (citing *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). "It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Id.* at 1352–53. "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. U.S.*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

The questions and answers to which Defendant asserted her Fifth Amendment privilege as set forth in Exhibit A to the Addendum (the "Questions"), are as follows:

Q: "—you were not an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or self-employed in a trade, profession, or other activity either full-time or part-time?"

A: "Interesting."

Q: "So my question for you, ma'am, is the block there at paragraph 18 is checked none. Is this a correct answer?"

A: "Sir, I am not going to answer. I'm going to take the Fifth because there is extenuating circumstances, and I don't think it's well-described in this paragraph."

Q: "I'm sorry. When you say you're taking the fifth, what does that mean?

A: "I refuse to answer on the grounds it may incriminate me."

Q: "So you believe that answering that question would tend to subject you to criminal liability?"

A: "Yeah. For barratry it would, yes."

Q: "So just so I'm clear, ma'am, it's your position you refuse to answer any questions about paragraph 18 of you Statement of Financial Affairs, page 12 and 13 of 20, because doing so would potentially subject you to criminal prosecution?

A: "Well, if that's your interpretation of it. I say there is circumstances that is not described in this paragraph. And

it would tend to incriminate me if—with its limited 18 statement."

Q: . "Yes. Is there something about activity other—excuse me—activity either full or part time that you don't understand?"

A: "There's extenuating circumstances that are private. And I'm not going to commit that I was active during that period."

Q: "What circumstances are private that you don't want to talk about?"

A: "Will you take liability if I discuss it here?"

Q: "I don't understand what you're saying?

A: "I said I took the Fifth. But if you want to force this issue, will you take liability for breaking my privacy?"

Q: "I'm going to repeat my question. And I just want to hear an answer from you. Do you think checking the block marked none in response to paragraph 18 in the Statement of Financial Affairs is an accurate answer?"

A: "I'm going to take the Fifth because as far as I'm concerned the terms of activity parameter that question."

Q: "You realize activity is a noun in this context. It's asking were you self-employed in a trade, profession, or other activity. Do you understand?"

A: "Full or part-time."

Q: "Correct."

A: "Uh-huh" (affirmative)

Q: "And you refuse to answer that question, why?"

A: "Because there is extenuating circumstances. And I believe that I have the right to take the Fifth Amendment in that question."

### 1. Whether Defendant has a basis to invoke the Fifth Amendment privilege.

■ The privilege does not apply every time a party declares that answering a question would incriminate him—"his say-so does not of itself establish the hazard of incrimination." *Hoffman*, 341 U.S. at 486, 71 S.Ct. 814. In order for a party to be entitled to assert the Fifth Amendment privilege, he or she must be "confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination." *Argomaniz*, 925 F.2d at 1353 (citing *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968)). "The privilege applies only in 'instances where the witness has reasonable cause to apprehend danger' of criminal liability." *Id.* (quoting *Hoffman*, 341 U.S. at 486, 71 S.Ct. 814). "It is for the court to say whether his silence is justified, and to require him to answer if it clearly appears to the court that he is mistaken. *Hoffman*, 341 U.S. at 486, 71 S.Ct. 814 (citation omitted) (internal question marks omitted). A party does not have to prove the possibility of incrimination in the way a claim is usually required to be proved, otherwise he would be surrendering "the very protection which the privilege is designed to guarantee." *Id.* "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. 814.

■ Although the Defendant has not articulated exactly why she is in danger of criminal liability and instead refers to extenuating circumstances, the Court can understand, based on the Questions, why requiring the Defendant to answer could

subject her to criminal liability.[2] The Trustee has asked the Defendant whether an answer she provided on her Statement of Financial Affairs, which she signed under penalty of perjury, is correct. In effect, he is asking the Defendant whether she committed perjury by checking "none" as the answer to Question 18. Certainly, requiring the Defendant to answer could subject her to a possibility of criminal liability that is beyond "merely trifling or imaginary, hazards of incrimination." *Argomaniz*, 925 F.2d at 1353.

### 2. Whether Defendant waived her right to invoke the Fifth Amendment

A party can waive their right to invoke the Fifth Amendment privilege against self-incrimination. "The Fifth Amendment protection against self-incrimination is a fundamental constitutional right that must be rigorously protected." *In re Standard Financial Management Corp.*, 76 B.R. 864, 865 (Bankr.D.Mass. 1987). "[A] testimonial waiver will not be lightly inferred." *In re A & L Oil Co., Inc.* 200 B.R. 21, 24 (Bankr.D.N.J.1996) (citing *Smith v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949)). Courts "must indulge every reasonable presumption against finding testimonial waiver." *Id.* (citing *Emspak v. United States*, 349 U.S. 190, 198, 75 S.Ct. 687, 99 L.Ed. 997 (1955)).

A testimonial waiver occurs when a party voluntarily under oath in the same proceeding provides incriminating facts. *Rogers v. U.S.*, 340 U.S. 367, 373–74, 71 S.Ct. 438, 95 L.Ed. 344 (1951). Once the incriminating facts are revealed, the privilege is waived as to the details of those facts. *Id.* This is so because after the incriminating facts are revealed, the danger of criminal liability from further disclosure of those facts is gone and the purpose of the privilege no longer exists. *Id.* To do otherwise would "open the way to distortion of facts by permitting a witness to select any stopping place in testimony." *Id.* at 371, 71 S.Ct. 438. However, courts must examine whether responses to follow-up questions would tend to further incriminate the party or subject him to new areas of incrimination. *Id.* If so, that party may still claim the Fifth Amendment privilege. *Id.*; *In re Paige*, 411 B.R. 319, 335 (Bankr.N.D.Tex.2008) (explaining that a party may "refuse to answer any questions about a matter already discussed, even if facts already revealed are incriminating, as long as the answers may tend to further incriminate [the party]."). For example, if a person admitted to hitting someone, they may still be able to assert the privilege to the question of what, if anything, they hit the other person with because the presence of a weapon or some instrument may be an element of a different crime or perhaps be the difference between a misdemeanor and a felony.

Relying on those principles, the Second Circuit created a widely adopted two-prong test to determine whether a party has waived their right to claim the Fifth Amendment privilege. Under that test, the privilege is waived if: "(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely

---

**2.** Defendant's response during the deposition claims that answering will incriminate her for barratry. While the Court is not convinced that there exists more than a trifling possibility of a criminal prosecution for barratry, it nevertheless understands that an answer to the Questions could lead to a real possibility of criminal liability for other crimes, such as perjury.

on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." *Klein v. Harris,* 667 F.2d 274, 287–88 (2d Cir.1981). The court explained that a court must focus on a distortion of the facts because a waiver of the privilege should only be inferred in "the most compelling circumstances." *Id.* And those circumstances do not exist unless "a failure to find a waiver would prejudice a party to the litigation." *Id.* The second prong is established if a witness' prior statements were (a) testimonial, that is, voluntarily made under oath in the context of the same judicial proceeding and (b) incriminating, meaning that they "directly inculpated the witness on the charges at issue" and did not instead deal with matters "collateral" to the events surrounding the commission of the crime. *Id.*

■■■ The Trustee claims that the Defendant waived her Fifth Amendment privilege when she answered questions at the deposition about her role in International Environmental Association, forensic loan audits and analyses, and courses that she instructed on forensic auditing. Those facts were voluntarily given under oath at the examination. The facts the Defendant revealed, in and of themselves, were not incriminating. That she conducted forensic loan audits and analyses and was the instructor of courses does not necessarily incriminate her. However, it does seem that the facts could contradict information provided in prior documents signed under oath and filed in her bankruptcy case. The Court need not determine whether those facts were incriminating, because even assuming they are incriminating, she may still invoke the Fifth Amendment in response to the Questions. The Court does not believe the facts that the Defen-

dant has provided will be distorted or that the Trustee will be prejudiced if he does not obtain the answer to the Questions. Moreover, assuming her prior statements are incriminating, the answers to the Questions may tend to further incriminate her. The Court again understands, based on the nature of the Questions themselves, that it is possible that the response could create further criminal liability and/or "furnish a link in the chain of evidence needed to prosecute the [Defendant]" for other crimes. *Hoffman,* 341 U.S. at 486, 71 S.Ct. 814. The Court believes answering the Questions could further incriminate her and, therefore, she still has the right to invoke her Fifth Amendment privilege against self-incrimination.

■■■ As the Court mentioned during the March 3, 2015 hearing, the Court is concerned whether the Defendant understands the impact of her decision to invoke the Fifth Amendment privilege, particularly because this is a civil case, not a criminal case. First, in a civil case, the Court may draw an adverse inference against a party that invokes the Fifth Amendment privilege with respect to the matter for which the privilege is asserted. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1304 (11th Cir. 2009). Second, if the Defendant does choose to invoke her Fifth Amendment privilege with respect to certain questions during discovery, she may not be able to change her mind about that decision at trial because of the potential prejudice to the Trustee. "The Fifth Amendment privilege cannot be invoked to oppose discovery and then tossed aside to support a party's assertions." *SEC v. Zimmerman,* 854 F.Supp. 896, 899 (N.D.Ga.1993) (holding that defendant in civil case who waited until after discovery had been completed could not use any evidence which was with-

held by the invocation of the testimonial privilege).

### Conclusion

Accordingly, for the reasons stated herein and those announced on the record at the conclusion of March 3, 2015 hearing, it is hereby

ORDERED that the Motion is DENIED as to the Questions to which the Defendant invoked her Fifth Amendment right against self-incrimination. It is

FURTHER ORDERED that the Motion is GRANTED with respect to the questions to which Defendant objected on the grounds of relevancy. The Defendant is ORDERED to appear for oral examination at a time and place mutually agreeable to her and the Trustee, but in no event later than May 5, 2015, and answer those questions and reasonable follow up questions asked by the Trustee at a further deposition.

**IT IS ORDERED**